Joel H. CAIN, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. 25386.

Missouri Court of Appeals,
Southern District,
Division One.

March 26, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Ryan Harding, Assistant Attorney General, Jefferson, MO, for Appellant.

Erik A. Bergmanis, Matthew C. Price, Bergmanis & McDuffey, Camdenton, MO, for respondent.

JAMES K. PREWITT, Judge.

Pursuant to § 577.041, RSMo 2000, the Director of Revenue ("Director") revoked the driving privileges of Joel H. Cain based on his refusal to submit to a chemical test upon his arrest for driving while intoxicated.

Cain petitioned the Circuit Court of Hickory County for review. In his petition, Cain contended, in part, that: (1) he was not properly under arrest; (2) the arresting officer did not have reasonable grounds to believe Cain was driving while intoxicated; and (3) Cain did not refuse to submit to a chemical test at the request of the arresting officer.

■ After an evidentiary hearing, the circuit court reinstated Cain's driving privileges upon its finding that "there was no probable cause for the arresting officer to believe [Cain] was driving while intoxicated." With one point relied on, Director appeals and argues that the trial court erred in finding that the arresting officer lacked reasonable grounds to arrest Cain for driving while intoxicated.

On September 2, 2002, a collision occurred on a gravel road in Hickory County between an all-terrain vehicle ("ATV") driven by Cain and a pick-up truck. The impact occurred as Cain was attempting, or had just made, a left-hand turn out of a driveway and onto the gravel road. When Trooper Michael Arand of the Missouri Highway Patrol ("Trooper") arrived at the scene, Cain was being administered aid by medical personnel. Trooper approached the driver of the pick-up and noticed an odor of intoxicants. Trooper conducted non-specified field sobriety tests on that driver, which, according to Trooper, showed no indication of intoxication. The driver of the pick-up informed Trooper that immediately following the collision, friends of Cain removed a cooler from the scene.

Trooper then approached Cain, who was on a backboard and being administered medical aid by a paramedic and an emergency medical technician. Trooper observed that Cain had a head injury. During his interview with Cain regarding the incident, Trooper asked Cain to take a field sobriety test, specifically a gaze nystagmus test, which was the only test Trooper deemed was an option due to Cain's status of being strapped to a backboard, which limited Cain's ability to participate in any other tests.

Cain refused to participate in the field sobriety test, initially claiming that he was in too much pain. As Trooper was approaching Cain, Trooper overheard the paramedic ask Cain about his level of pain, to which Cain responded that he was "not really" in any pain. Trooper informed Cain that the test would not cause any pain, but Cain stated that the sun was in his eyes. Although Trooper noted that he was able to place himself in a position over Cain that would block the sun, Cain again refused to participate in the gaze nystagmus test. Cain asked Trooper if Trooper "had anything better to do."

After Cain's refusal to participate in the field sobriety test, Trooper advised Cain that he was under arrest for driving while intoxicated. Trooper then asked Cain to submit to a blood test, and, according to Trooper, Cain refused.

In terms of other indicia of intoxication, according to Trooper, Cain's eyes were glassy. Trooper did not notice any odor of intoxicants, but Cain was wearing an oxygen mask during the interview. On the Alcohol Influence Report, Trooper marked that Cain's speech was coherent and that

Cain's ability to follow instructions was good.

At the hearing held on October 16, 2002, in addition to Trooper, who was the only witness brought on behalf of Director, Cain called several witnesses. Cain did not testify on his own behalf. Two witnesses, Cain's father, Dean, and Sheila McCarty, who arrived on the scene after the collision occurred, testified that they overheard Trooper ask Cain to submit to a blood test. Dean testified that he heard his son say he was in pain and that he "didn't want to do the test." Dean also testified that Trooper was asking that the blood test be conducted as Cain "was about to be put in the helicopter." According to Dean, the helicopter created a lot of noise, which made it difficult to hear what everyone was saying.

Both Dean and McCarty testified that they overheard some sort of discussion or argument between Trooper and a paramedic, Michael Moore, regarding the blood test. Dean testified that Trooper essentially "ordered [me] away" and "was adamant about wanting to draw blood" from Cain. Moore, however, according to Dean, was adamant about not drawing blood, even telling Trooper, "Well, I'm going to do it my way until I'm proven different." According to McCarty, Trooper and Moore each expressed that they were "just trying to do [their] job." McCarty also heard Dean ask Trooper if they "could please wait and see if [Cain] was going to ... live, and worry about the ... testing and stuff later."

Moore testified that he and Trooper had a "strong discussion" after Trooper requested that Moore draw Cain's blood and Moore informed Trooper that he "could not draw blood for legal reason[s] ... in the ditch, but ... could do so in the back of the ambulance." Cain was not transported by ambulance, but instead by helicopter to St. John's Hospital in Springfield, Missouri for further medical attention. When asked about what others had overheard at the scene, Moore testified that "[a]fter the event, I asked [Trooper] not to interfere with my job and patient care." Moore testified that Trooper told Moore "he could and would arrest me" for refusing to draw blood.

Dean, McCarty, and Cain's son, Tyler, all testified that they witnessed Trooper shine, or attempt to shine, a pen light into Cain's eyes. Trooper testified that he does not carry a pen light, did not use one that day, and always uses his finger to administer the gaze nystagmus test.

Tyler, who was fourteen years old at the time and was operating an ATV behind Cain when the collision occurred, testified that there was no cooler on the back of his father's ATV. Tyler further testified that Cain's ATV was not equipped to carry such an item. Both Tyler and Dean testified that Cain had not been drinking prior to the collision. Dean had seen Cain forty-five minutes before the collision occurred.

At the end of closing arguments, the trial court indicated that the evidence appeared to show that a collision occurred, that Cain had glassy eyes, and that Cain refused to cooperate in the gaze nystagmus test. The trial judge further stated that he did not think that glassy eyes and the fact that a collision occurred were enough for probable cause, but wanted to allow Director the opportunity to find a case where that was enough, or where refusing to participate in field sobriety tests provides probable cause. The judge noted, "If you have a case that indicates that a refusal to take one of these initial tests also is an objective manifestation the [c]ourt can consider in regards to whether there was probable cause to arrest him for driving while intoxicated, I'd be happy to give you a chance to produce that." The

trial court continued the case to allow both sides to submit further written argument on the issues.

A docket entry from November 6, 2002, that is denominated a judgment and signed by the trial judge, includes the finding that "there was no probable cause for the arresting officer to believe [Cain] was driving while intoxicated." Director was ordered to set aside the revocation of Cain's driving privileges. In a letter dated December 6, 2002, counsel for Cain indicated that he had prepared the final judgment and order document, which contained the same information as the docket entry, for filing and asked that the trial judge sign the document. The judge did sign the document, entitled "Judgment Entry and Order," which was filed on December 9, 2002. The appeal was filed January 13, 2003.[1]

In this appeal, Director raises one point and argues that the trial court erred in its determination that Trooper lacked probable cause to arrest Cain for driving while intoxicated.

■■■ In a judge-tried case, the judgment is to be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Boyd v. Dir. of Revenue*, 71 S.W.3d 262, 264 (Mo.App.2002). We defer to the trial court's determination of credibility. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo.banc 2002). However, if the evidence is uncontroverted or admitted, such that the real issue is strictly a legal one regarding the legal effect of the evidence, then there is no need to defer to the trial court's judgment. *Id.* The evidence was controverted here; thus,

deference is due to the trial court's determination. *Id.*

■■■ Under § 577.020.1, RSMo 2000 (Missouri's implied consent law), any person who drives on public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of his or her blood. *Hinnah*, 77 S.W.3d at 619. Although a person under arrest has the statutory right to refuse a chemical analysis of his or her blood alcohol level, a driver's refusal to submit to the test generally results in the revocation of a person's driver's license for a period of one year. *Id.*; § 577.041.3, RSMo 2000. Upon such a revocation, a driver may petition for review and an order staying revocation until such petition can be heard. § 577.041.4, RSMo 2000.

■■■ Section 577.041.4, RSMo 2000, provides that in a proceeding to determine whether to stay a rescission of driving privileges based on a driver's refusal to submit to chemical testing, the trial court shall determine only (1) whether the driver was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) whether the driver refused to submit to a chemical test. *Nightengale v. Dir. of Revenue*, 14 S.W.3d 267, 269 (Mo.App.2000). Unless all three are found in the affirmative, the trial court shall order Director to reinstate the driving privileges. *Id.* At the hearing to review the license revocation, Director has the burden of proof on all three issues. *Hawkins v. Dir. of Revenue*, 7 S.W.3d 549, 551 (Mo.App.1999). Director must establish all three elements by a preponderance

---

1. In the appeal documentation, it is noted that the Judgment Entry and Order contains a header signifying the case is in the Circuit Court of Camden County, but the document was signed by the trial judge from Hickory County and filed there. This purported mistake does not affect our analysis.

of the evidence. *Callendar v. Dir. of Revenue*, 44 S.W.3d 866, 868 (Mo.App.2001)

The trial court's only finding in the matter here was that no probable cause existed. There is no dispute that Cain was arrested. It is at issue whether Trooper had reasonable grounds to believe that Cain was driving while intoxicated. As to whether Cain refused to submit to a chemical test, Cain argues that there was conflicting evidence on that issue. Given that, as will be discussed further below, we affirm the trial court's determination that no probable cause existed, there is no need to address the third prong of whether Cain refused to submit to a chemical test. *See Nightengale*, 14 S.W.3d at 269.

 Returning to the second prong under § 577.041.4, RSMo 2000, under which the arresting officer must have reasonable grounds to believe that the person was driving while intoxicated, we note that reasonable grounds is virtually synonymous with probable cause. *Baptist v. Lohman*, 971 S.W.2d 366, 368 (Mo.App.1998). "There is no precise test for determining whether probable cause existed; rather, it is based on the particular facts and circumstances of the individual case." *Parres v. Dep't of Revenue*, 75 S.W.3d 311, 314 (Mo.App.2002). Director is not required to prove that a defendant was intoxicated, only that the officer or officers involved had reasonable grounds to believe the defendant was intoxicated. *See Calicotte v. Dir. of Revenue*, 20 S.W.3d 588, 593 (Mo. App.2000).

 In determining whether reasonable grounds existed, the trial court must evaluate the facts and view the circumstances as a cautious, trained, and prudent police officer would have viewed them at the time of the arrest. *Hockman v. Dir. of Revenue*, 103 S.W.3d 382, 385 (Mo. App.2003). Probable cause is a fluid concept and the standard for determining whether it exists is the probability of criminal activity rather than a *prima facie* showing of guilt. *Rain v. Director of Revenue*, 46 S.W.3d 584, 588 (Mo.App.2001). Absolute certainty is not required, but mere suspicion is not enough to establish reasonable grounds. *Id.* Probable cause must be determined on the basis of facts known to the arresting officer at the time of the arrest, not on the basis of facts learned later. *See Howard v. McNeill*, 716 S.W.2d 912, 915 (Mo.App.1986).

Here, as indicated by the trial judge at the end of closing arguments, the evidence showed that Cain was injured as a result of a collision between the ATV he was operating and a pick-up; Trooper observed that Cain's eyes were glassy; and, Cain "did not cooperate in taking" the gaze nystagmus test. Evidence was also presented that Trooper was informed that friends of Cain had removed a cooler from the scene prior to Trooper's arrival. Trooper testified that, although he noticed an odor of intoxicants from the driver of the pick-up, Trooper did not smell any odor of intoxicants on Cain.

Cases exist in which the Court has not allowed injuries to be used to excuse behavior that might otherwise be indicia of intoxication. *See Rain*, 46 S.W.3d at 588–89; *Rinne v. Dir. of Revenue*, 13 S.W.3d 658, 661 (Mo.App.2000). In *Rain*, the Court noted testimony from the arresting officer that in most collisions involving head injuries, the person is unconscious and, if conscious, glassy eyes are indicative of intoxication and not a result of the head injury. 46 S.W.3d at 588–89. It is also correct that in cases not involving possible injuries, glassy eyes has been one of the indicia used to show reasonable grounds for intoxication. *Hockman*, 103 S.W.3d at 385.

However, in both *Rain* and *Rinne,* other indicia of intoxication were present. In *Rain,* the petitioner's eyes were glassy and bloodshot, his speech was slurred, and he had trouble concentrating. 46 S.W.3d at 586. In *Rinne,* in addition to the fact that the driver had been involved in a single car accident, there was an odor of intoxicants emanating from his breath and he admitted he had been drinking. 13 S.W.3d at 661.

██ The trial court questioned whether the refusal to participate in a field sobriety test was an "objective manifestation" the court could consider in determining whether probable cause existed. We agree that it is well established that refusal to take a field sobriety test is evidence of intoxication. *Edmisten v. Director of Revenue,* 92 S.W.3d 270, 274 (Mo.App. 2002); *Hockman,* 103 S.W.3d at 385.

██ Considering the information Trooper received that a cooler had been removed from the scene, an officer may rely on information reported by citizen witnesses. *Rain,* 46 S.W.3d at 588. During the trial, evidence was presented to refute the information, including testimony from Cain's son that Cain was not carrying a cooler on his ATV and that Cain's ATV was not equipped to carry such an item. Although this type of testimony is largely irrelevant, it may be used to show that the officer's belief was unreasonable. *Hinnah,* 77 S.W.3d at 622. Director correctly states that whether probable cause exists is dependent upon the information in the officer's possession prior to the arrest. *Id.* at 621.

Given the totality of the circumstances, there was sufficient evidence to support the trial court's determination that reasonable grounds did not exist for Trooper to believe that Cain was driving while intoxicated. The indicia of intoxication were slim and the trial court may well have found that the Trooper's reliance on the statement from the driver of the pick-up truck that a cooler had been removed from the scene was unreasonable.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.