Paul Steven HOWDESHELL,
Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent–Appellant.

No. 26740.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 22, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen.;
Cheryl Caponegro Nield, Assoc. Solicitor
Gen., Jefferson City, MO, for Appellant.

Timothy R. Cisar, Lake Ozark, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

The Director of Revenue (Director) revoked the driver's license of Paul Howdeshell (Howdeshell) for one year after he refused to submit to a chemical test of his breath to determine his blood alcohol content. Howdeshell filed a petition for review. At trial, the only evidence presented by either party was a certified copy of Howdeshell's driving records from the Department of Revenue. The trial judge decided he had "no basis to believe that there was probable cause to arrest [Howdeshell] for driving while intoxicated." Therefore, the court entered a judgment setting aside the administrative revocation and reinstating Howdeshell's driving privileges. The Director contends the judgment is not supported by the evidence and resulted from a misapplication of the law. We agree. The judgment is reversed, and the cause is remanded with directions to reinstate the Director's one-year revocation of Howdeshell's driver's license.

## I. Summary of the Relevant Statutory Framework

Section 577.020.1 specifies six circumstances in which a person who operates a motor vehicle upon the public highways of this state is deemed to have consented to a chemical test of the person's breath, blood, saliva or urine to determine the alcohol or drug content of the person's blood.[1] One such circumstance is when "the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.020.1(1). If the arrestee refuses to take the chemical test, the officer

is required to make a sworn report of that fact to the Director. § 577.041.2(2). Upon receipt of the officer's report, the Director is required to revoke the individual's driving privileges for one year. § 577.041.3.

By filing a petition for review, the individual can obtain a post-revocation hearing in circuit court. § 577.041.4. There are only three issues to be decided at the hearing: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5. The burden of proof rests on the Director. *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App. 2001). If the Director makes a *prima facie* case for revocation, however, the burden of producing evidence to rebut the Director's case shifts to the driver. *McFall v. Director, Dept. of Revenue*, 162 S.W.3d 526, 533–34 (Mo.App.2005); *Hamor v. Director of Revenue*, 153 S.W.3d 869, 872 (Mo.App.2004).

## II. Factual and Procedural History

In August 2004, Howdeshell was notified by the Department of Revenue that his driving privileges would be revoked for one year because he refused to submit to a chemical test of his blood alcohol level. He filed a petition for review pursuant to § 577.041.4.

In November 2004, attorneys for the Director and Howdeshell appeared for the

---

1.  All references to statutes are to RSMo Cum.    Supp. (2004).

post-revocation hearing. They agreed that the Director's case would be submitted via Exhibit 1, which was a certified copy of Howdeshell's driving records from the Department of Revenue. These records were incomplete because the first page of the officer's alcohol influence report (AIR) and the third page of his incident report were missing. Neither attorney appears to have noticed the omissions, and Exhibit 1 was admitted by stipulation. It contained the facts set out below.

At 1:48 a.m. on August 5, 2004, Osage Beach Police Officer Tim Taylor (Officer Taylor) was traveling west on Highway 54. At that location, the highway had two westbound and two eastbound lanes. Officer Taylor observed a white Ford Taurus traveling at a high rate of speed in the inside, eastbound lane. He activated his radar unit and checked the Taurus' speed. It was traveling 86 m.p.h. in a 45–m.p.h. zone. A light rain was falling, and the pavement was wet. As the Taurus approached a curve, it slid sideways into the outer, eastbound lane and nearly struck the curb. The vehicle increased speed as it exited the curve. Officer Taylor continued to monitor his radar unit. As the Taurus passed Officer Taylor, it was going 90 m.p.h. in a 45–m.p.h. zone. Officer Taylor made a quick U-turn and activated his lights and siren. The brake lights on the Taurus activated briefly, but then went off. It was obvious to Officer Taylor that the Taurus was not slowing down. When he caught up with the vehicle, it made a quick left turn into a gravel lot. Officer Taylor followed and exited his patrol car. The driver of the Taurus said his accelerator stuck. He provided his driver's license and proof of insurance to Officer Taylor. These documents identified Howdeshell as the Taurus' driver. Officer Taylor detected a strong odor of intoxicants coming from the Taurus and asked Howdeshell if he had been drinking. He admitted to drinking "a couple of beers." While speaking with him, Officer Taylor detected a strong odor of intoxicants coming from Howdeshell's person. When Officer Taylor advised Howdeshell to get out of the Taurus, he hesitated and seemed confused. He appeared to be trying to unbuckle his seat belt, but it was not fastened. Howdeshell was given some field sobriety tests and failed all of them. He was arrested for driving while intoxicated and transported to the police station. Howdeshell was asked to submit to a chemical test of his breath. He asked for an attorney and was given 20 minutes to contact one. After the 20–minute period expired, Howdeshell was again asked to submit to a chemical test of his breath. He refused to give a sample.

After Exhibit 1 was admitted in evidence, the attorneys stipulated that Howdeshell would have two days to present any additional evidence he wanted the court to consider. When none was presented within the allotted time period, the court closed the evidence and took the case under submission.

In December 2004, the court entered a judgment in favor of Howdeshell. The court found that Howdeshell did refuse the breath test, but he was entitled to have his driving privileges reinstated for the following reasons:

[T]he court finds no evidence was presented regarding whether or not [Howdeshell] was the only person in the car. Evidence was presented that the officer observed a strong odor of intoxicants in the car but no evidence showing results of field sobriety tests were described (page 3 of incident report was not submitted). Court therefore has no facts to review relating to any sobriety tests, only officer's conclusions. Court does not know what tests were given nor a description of [Howdeshell's] perform-

ance. Therefore, the Court has no basis to believe that there was probable cause to arrest [Howdeshell] for driving while intoxicated.

This appeal followed.

### III.   Standard of Review

■ We must affirm the trial court's judgment unless: (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; (3) the trial court erroneously declared the law; or (4) the trial court erroneously applied the law. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); *Laney v. Director of Revenue,* 144 S.W.3d 350, 352 (Mo.App.2004). In license revocation cases, however, it is important to note that neither a trial court nor an appellate court may disregard uncontroverted evidence supporting the fact that all elements of the Director's case were met. *Curnutt v. Director of Revenue,* 142 S.W.3d 225, 227 (Mo.App.2004).

### IV.   Discussion and Decision

■ Exhibit 1 was the only evidence presented by either party. This exhibit consisted of certified copies of the Director's records, which included a copy of the AIR and Officer Taylor's incident report. The facts necessary to establish the Director's *prima facie* case can be proven through such documentary evidence alone. *See, e.g., Curnutt,* 142 S.W.3d at 227; *Burk v. Director of Revenue,* 71 S.W.3d 686, 687 (Mo.App.2002); *Lyons v. Director of Revenue,* 36 S.W.3d 409, 411 (Mo.App. 2001); *McCabe v. Director of Revenue,* 7 S.W.3d 12, 14 (Mo.App.1999). On appeal, the Director and Howdeshell agree that Exhibit 1 contained sufficient facts to prove that Howdeshell was arrested and refused the breath test. Therefore, the first and third elements of the Director's *prima facie* case were met. The only dis-

puted issue is whether Officer Taylor had reasonable grounds to believe Howdeshell was driving a motor vehicle in an intoxicated condition. Reasonable grounds and probable cause are virtually synonymous. *Hinnah,* 77 S.W.3d at 620. As our Supreme Court noted in *Hinnah:*

> Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense. Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest. There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.

*Id.* at 621 (citations omitted). "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." *Brown v. Director of Revenue,* 85 S.W.3d 1, 4 (Mo. banc 2002). This level of probable cause exists "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Rain v. Director of Revenue,* 46 S.W.3d 584, 587 (Mo.App.2001). The trial court must assess the facts "by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Cox v. Director of Revenue,* 37 S.W.3d 304, 307 (Mo.App.2000). In the case at bar, the trial court decided that Officer Taylor lacked probable cause to believe Howdeshell was driving a motor vehicle while in an intoxicated condition. The court gave two reasons for this decision, which we shall examine in turn.

The first reason given by the trial court for finding a lack of probable cause was

that the Director failed to prove Howdeshell was the only person in the Taurus. We must admit to having some difficulty in discerning what the trial judge meant by this statement. The judge could have meant that the Director failed to prove Howdeshell had no passengers in his vehicle. If so, the court misapplied the law because the presence or absence of a passenger in the Taurus has no relevance whatsoever to the determination of the three issues the court was required to decide. *See* § 577.041.4. A determination that the Director failed to make a *prima facie* case for this reason is erroneous. Alternatively, the judge could have meant that the Director failed to prove Howdeshell was actually driving the Taurus. If so, the court misapplied the law and made a decision that is unsupported by the evidence. To make a *prima facie* case, the Director did not have to prove that Howdeshell was the driver of the car. *Hinnah,* 77 S.W.3d at 621–22; *Hamor,* 153 S.W.3d 869, 872 (Mo.App.2004). The Director was only required to prove that Officer Taylor had reasonable grounds to believe Howdeshell was driving the Taurus. *Shumaker v. Director of Revenue,* 171 S.W.3d 135, 138–39 (Mo.App.2005). The facts contained in Exhibit 1 were sufficient to prove this element of the Director's case. When the Taurus finally stopped, Officer Taylor approached the vehicle and asked the driver to produce his license and proof of insurance. The driver complied. Each of these documents identified Howdeshell as the driver. No contrary evidence was presented. Therefore, Officer Taylor did have reasonable grounds to believe Howdeshell was driving the Taurus. We conclude that the trial court's first reason for finding the Director failed to prove the existence of probable cause simply cannot be upheld, either legally or factually.

The second reason given by the trial court for finding a lack of probable cause was that the Director failed to present evidence concerning the details of the field sobriety tests administered to Howdeshell. Such information may have been contained in the missing pages from the AIR and Officer Taylor's incident report, which appear to have been inadvertently omitted from Exhibit 1. Once again, the salient issue is not whether Howdeshell was actually intoxicated; rather, it is whether Officer Taylor had reasonable grounds to believe that Howdeshell was intoxicated. *Hinnah,* 77 S.W.3d at 621; *Hamor,* 153 S.W.3d 869, 872 (Mo.App.2004). We interpret the trial court's ruling to mean that the Director had to present evidence concerning the details of the field sobriety tests administered to Howdeshell in order to make a *prima facie* case. For the following reasons, we disagree.

■■■ We begin by noting that "[i]t is not essential that field sobriety tests be performed in order to show reasonable grounds." *Edmisten v. Director of Revenue,* 92 S.W.3d 270, 274 (Mo.App.2002). Such non-mandatory tests supplement the officer's other observations and merely aid in the determination of whether there is probable cause to arrest. *Schulte v. Director of Revenue,* 55 S.W.3d 876, 879 (Mo.App.2001); *Terry v. Director of Revenue,* 14 S.W.3d 722, 724–25 (Mo.App.2000). In the case at bar, the uncontroverted evidence established that Officer Taylor had reasonable grounds to believe the following facts: (1) Howdeshell was driving the Taurus at 86–90 m.p.h. on wet pavement in a 45–m.p.h. speed zone; (2) due to the rainy conditions and the vehicle's high rate of speed, the car slid from the inside to the outside lane of traffic and nearly hit the curb as the vehicle rounded a curve; (3) Howdeshell sped up after that event took place; (4) he continued to drive at a high

rate of speed after Officer Taylor began his pursuit with lights and siren activated; (5) Officer Taylor detected a "strong odor of intoxicants" coming from the Taurus and Howdeshell's person; (6) Howdeshell admitted drinking a couple of beers; and (7) when he was asked to exit the Taurus, he appeared confused and attempted to unlatch his seatbelt even though it was not fastened. These uncontroverted facts were sufficient to prove the second element of the Director's *prima facie* case without even considering the field sobriety tests conducted by Officer Taylor. Similar observations by an officer have been held sufficient to establish probable cause to arrest a driver for driving while intoxicated in the absence of any field sobriety tests being performed. *See, e.g., Chancellor v. Lohman,* 984 S.W.2d 857, 858 (Mo. App.1998) (probable cause to arrest existed because the driver was traveling at high speed, had alcohol on his breath, admitted drinking, was unsteady on his feet, and had bloodshot and glassy eyes); *McNeill v. Wallace,* 699 S.W.2d 534, 535 (Mo.App. 1985) (probable cause to arrest existed because the driver weaved between lanes, failed to dim his lights, had glassy eyes, did not walk normally, and smelled strongly of alcohol).

■ Furthermore, the certified records admitted in evidence stated that Officer Taylor did administer field sobriety tests to Howdeshell, and he failed all of them. The trial court appears to have disbelieved this evidence, even though it was uncontradicted, because Exhibit 1 did not contain the details of the testing. Howdeshell argues the missing pages of Exhibit 1 contained this information, and the Director's failure to adduce such evidence created a legitimate fact question for the trial court to decide. We are unable to agree. In order for a trial court to disregard evidence that supports the Director's *prima*

*facie* case, there must be a legitimate factual dispute or credibility determination for the court to make. In rare instances, a trial court can be required to decide a legitimate factual dispute that arises because the documentary evidence presented by the Director is internally inconsistent. *See, e.g., Richardson v. Director of Revenue,* 165 S.W.3d 236, 241 (Mo.App.2005); *Reece v. Director of Revenue,* 61 S.W.3d 288, 292 (Mo.App.2001). More typically, a legitimate factual dispute or credibility determination is presented by: (1) cross-examination of a witness for the Director which raises a legitimate credibility dilemma with respect to a material aspect of the Director's case; or (2) calling one or more witnesses whose testimony directly contradicts the Director's evidence. *See, e.g., McCarthy v. Director of Revenue,* 120 S.W.3d 760, 762–63 (Mo.App.2003); *Ruth v. Director of Revenue,* 143 S.W.3d 741, 743–44 (Mo.App.2004). Here, the trial court was not required to decide a legitimate factual dispute or make a credibility determination concerning the field sobriety tests administered by Officer Taylor. Unlike the records in *Richardson* and *Reece,* Exhibit 1 contained no internal inconsistencies concerning Howdeshell's failure of the field sobriety tests. Since Exhibit 1 was the only evidence introduced at the hearing, Howdeshell also failed to controvert this evidence via the direct or cross-examination testimony of any witness. The incomplete nature of Exhibit 1 was significant only if the facts contained in the remainder of the exhibit were insufficient to establish the Director's *prima facie* case. *See Routt v. Director of Revenue,* 180 S.W.3d 521, 524 (Mo.App.2006) (although one page of the officer's narrative report was missing, there was still sufficient evidence in the rest of the exhibit to support a finding that the officer had reasonable grounds to believe Routt was driving while intoxicated); *Melvin v. Director of Revenue,* 130 S.W.3d 11, 15 (Mo.App.

2004) (holding that the trial court erred in ruling for driver because the Director's records were incomplete; the missing pages were not necessary for the trial court to find that probable cause existed based on the uncontroverted facts contained in the officer's narrative report); *Marsey v. Director of Revenue,* 19 S.W.3d 176, 177–78 (Mo.App.2000) (although the first page of the AIR was missing, the trial court erred in concluding that the uncontroverted facts in the Director's records were insufficient to prove probable cause). In any event, the fact that Exhibit 1 was missing two pages was readily apparent when it was offered. Howdeshell had no objection to its admission. Therefore, he waived any objection to the exhibit on the ground that it was incomplete. *See Barlow v. Fischer,* 103 S.W.3d 901, 907 (Mo. App.2003). Prior to the close of the evidence, Howdeshell could have furnished the court with the two missing pages from Exhibit 1. He also could have presented testimony from Officer Taylor or himself concerning how the field sobriety tests were conducted. Howdeshell's failure to controvert the evidence that he failed the field sobriety tests in any of the foregoing ways raises the presumption that such evidence would have been unfavorable to him. *McCarthy,* 120 S.W.3d at 763; *Smith v. Director of Revenue,* 77 S.W.3d 120, 122 n. 3 (Mo.App.2002).

Because Officer Taylor's statement concerning Howdeshell's failure of the field sobriety tests was uncontradicted, the trial court erred in disregarding that evidence for the purpose of determining the existence of probable cause. *See Terry v. Director of Revenue,* 14 S.W.3d 722, 724–25 (Mo.App.2000) (statement in AIR that driver failed HGN field sobriety test, which was admitted without objection and was not refuted at trial, conclusively contradicted driver's contention that he did not really fail the test). When Howdeshell's failure of the field sobriety tests is considered in conjunction with the other facts already summarized above, we conclude the Director presented sufficient evidence to prove the second element of its *prima facie* case: that Officer Taylor had reasonable grounds to believe Howdeshell was driving a motor vehicle while in an intoxicated condition. *See, e.g., Walker v. Director of Revenue,* 137 S.W.3d 444, 446 (Mo. banc 2004) (probable cause existed because the driver was swerving, his movements were slow, he smelled of alcohol, had glassy eyes, admitted drinking two beers and failed a field sobriety test); *Brown v. Director of Revenue,* 85 S.W.3d 1, 7 (Mo. banc 2002) (probable cause existed because the driver made an illegal turn, did not immediately pull over when the officer pursued, had bloodshot eyes, put his foot down during a field sobriety test and smelled strongly of alcohol); *Soest v. Director of Revenue,* 62 S.W.3d 619, 621 (Mo.App.2001) (probable cause existed because driver was weaving, admitted drinking one beer and failed field sobriety tests); *Peters v. Director of Revenue,* 35 S.W.3d 891, 893 (Mo.App.2001) (probable cause existed because driver was speeding, had watery and glassy eyes, smelled of alcohol and failed one field sobriety test). The trial court's contrary conclusion is not supported by the evidence and appears to have been based on an erroneous application of the law.

The Director made a *prima facie* case for revocation, which Howdeshell failed to rebut. Therefore, we reverse the judgment and remand the cause with directions that the circuit court reinstate the one-year revocation of Howdeshell's driving privileges.

SHRUM, P.J., and GARRISON, J., concur.