William S. FINDLEY, Appellant,

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. 27136.

Missouri Court of Appeals,
Southern District,
Division II.

Nov. 7, 2006.

William Swain Perkins, Thayer, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.; Brad R. Jones, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

William Findley (Petitioner) appeals from a judgment sustaining the decision of the Director of Revenue (Director) to revoke Petitioner's driving privilege for one year pursuant to § 577.041 for refusing to submit to a chemical test to determine his blood alcohol content.[1] We affirm.

A person who operates a motor vehicle upon a public highway of this state is deemed to have consented to undergo a blood test to determine his or her blood alcohol content after being arrested "for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated ... condition[.]" § 577.020.1(1). If an arrestee refuses to take the blood test, the officer is required to make a sworn report of that fact to the Director. § 577.041.2(2). Upon receipt of the officer's report, the Director is required to revoke the individual's driving privilege for one year. § 577.041.3.

 By filing a petition for review, the individual can obtain a post-revocation hearing in circuit court. § 577.041.4. If the person is 21 years of age or older, there are only three issues to be decided at the hearing: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4.[2] "If the court determines any issue not to be in the

affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5. The burden of proof is on the Director. *Howdeshell v. Director of Revenue*, 184 S.W.3d 193, 195 (Mo.App. 2006). "If the Director makes a *prima facie* case for revocation, however, the burden of producing evidence to rebut the Director's case shifts to the driver." *Id.*

Petitioner was driving a pickup truck that was involved in a one-vehicle accident on January 26, 2004 at approximately 11:00 p.m. He sustained a broken right leg in the crash. The accident was investigated by Highway Patrol Sergeant David Finley (Finley). After going to the accident scene and later interviewing Petitioner at a hospital, Finley arrested Petitioner for driving while intoxicated and asked him to submit to a blood test to determine his blood alcohol content. Petitioner refused to do so. In February 2004, the Director notified Petitioner that his driving privilege would be revoked for one year for refusing to submit to a chemical test of his blood alcohol content as required by § 577.041. In March 2004, Petitioner filed a petition for review to contest that decision.

Trial on the petition was held in May 2005. The Director's evidence was presented through the testimony of paramedic Eric Woosley (Woosley) and Finley. The court also admitted Finley's Alcohol Influence Report and attached narrative supplement in evidence. Finley's testimony and report tended to prove that: (1) Petitioner was arrested; (2) the arrest occurred because Finley's investigation led him to conclude that Petitioner had been driving while intoxicated; and (3) he refused to submit to a blood test to determine his blood alcohol content. Petitioner's evidence was presented through his

1. All references to statutes are to RSMo Cum. Supp. (2004).

2. According to the record, Petitioner was 46 years old at the time of the accident.

testimony and the admission of medical records concerning his treatment for the broken leg. He denied driving while intoxicated and said his truck crashed due to ice on the highway. After hearing this conflicting evidence, the trial court sustained the revocation of Petitioner's driving privilege for one year. This appeal followed. Additional facts necessary to the disposition of the case are included below as we address Petitioner's two points of error.

 We must affirm the trial court's judgment unless there is no substantial evidence to support it, the decision is contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. *Verdoorn v. Director of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Richardson v. Director of Revenue,* 165 S.W.3d 236, 237 (Mo.App.2005). All contrary evidence and inferences are disregarded. *Dixon v. Director of Revenue,* 118 S.W.3d 302, 304 (Mo.App.2003). In determining whether the trial court's judgment is supported by the evidence or is against the weight of the evidence, we are required to defer to the trial court's conclusions on factual issues. *Hawk v. Director of Revenue,* 943 S.W.2d 18, 20 (Mo. App.1997). "A trial court is accorded wide discretion even if there is evidence that would support a different result." *Id.* We consider all fact issues upon which no specific findings were made to have been found in accordance with the result reached. Rule 73.01(c); *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); *Hawk,* 943 S.W.2d at 20.[3] We also defer to the trial court's credibility determinations. *Middlemas v. Director of Revenue,* 159 S.W.3d 515, 517 (Mo.App. 2005). In a driver's license revocation

case, it is the trial court's prerogative in assessing credibility to accept or reject all, part, or none of the testimony of any witness. *Thurmond v. Director of Revenue,* 759 S.W.2d 898, 899 (Mo.App.1988). As required by the applicable standard of review, we have summarized the facts set out below in the light most favorable to the judgment.

On January 26, 2004, Finley was on patrol near West Plains, Missouri. He was a Highway Patrol sergeant that had made approximately 250–300 arrests for driving while intoxicated during his career of more than 12 years as a law enforcement officer. At approximately 11:25 p.m., he was dispatched to investigate a one-vehicle accident on Route 19 about four miles north of Thayer, Missouri. While traveling to the accident scene, he noted that the weather was very cold and windy, but road conditions were fairly normal.

Upon arriving at the location of the accident, Finley saw a large blue pickup that had run off the left side of the road and struck a phone utility box, a fence and then a tree. There was nothing at the scene to indicate that the accident had been caused by anything other than driver error. Finley also found a beer can in the truck's cab, and there was a wet spot in the area of the driver's floorboard where it appeared something had been spilled. Petitioner had already been taken from the scene by ambulance to Ozarks Medical Center (the hospital) in West Plains. Finley proceeded to the hospital so he could interview Petitioner and conclude the investigation.

Around 1:05 a.m., Finley arrived at the hospital and found Petitioner in the emergency room. He was in obvious pain due to the broken leg he had sustained. Finley was in uniform and identified himself

---

**3.** All references to rules are to Missouri Court Rules (2006).

to Petitioner. After confirming Petitioner's identity, Finley asked how the accident happened. Petitioner said he was northbound on Route 19 when he slid on some "black ice," which caused him to lose control and run off the road. Finley was standing two or three feet away from Petitioner and could smell the strong odor of intoxicants about his person as he was speaking. No intoxicants had been spilled on Petitioner's clothing, and Finley observed vomit on the floor near Petitioner. His eyes were glassy and bloodshot. His speech was slurred. He admitted drinking approximately five beers during the course of the evening. Due to Petitioner's injuries, he was unable to perform typical field sobriety tests such as the walk-and-turn or one-leg stand. The only field sobriety test that Finley believed Petitioner could perform was to submit a breath sample for a portable breathalyzer test (PBT). When Finley asked Petitioner to submit to the PBT, however, he immediately became uncooperative. Finley stated, "[a]fter speaking with me and answering questions coherently previously, he turned toward the wall and started moaning and would not answer the question after repeated attempts." Finley placed the PBT instrument toward Petitioner's mouth with the tube attached, but he refused to turn his head and provide a breath sample. Based on Finley's observations, he concluded Petitioner was intoxicated.

Finley arrested Petitioner for driving while intoxicated at 1:12 a.m. and asked him to submit to a blood test to determine his blood alcohol content. When Finley did so, Petitioner immediately turned back around and asked to contact his attorney. Finley advised Petitioner that he had 20 minutes to do so. Petitioner started dialing the number, but his attempts were unsuccessful. At 1:40 a.m., Finley repeated his request that Petitioner submit to a blood test. He said he couldn't take the test because he had smoked some mar-

ijuana during the evening, and he knew it would be in his blood. Finley treated Petitioner's statement as a refusal to submit to the blood test.

■■■ Petitioner presents two points on appeal. At the outset, we note that Petitioner's arrest and his refusal to submit to the blood test are not in dispute. Both points on appeal are directed to the second element of the Director's *prima facie* case: whether Finley had reasonable grounds to believe Petitioner was driving a motor vehicle while in an intoxicated condition. *See Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4(2)(a). As used in that statute, the phrase "reasonable grounds" is synonymous with probable cause. *Hinnah*, 77 S.W.3d at 620. We use the following test to determine whether probable cause exists:

> "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest. There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.

*Id.* at 621 (citations omitted). "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002). The trial court must assess the facts "by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Cox v. Director of Revenue*, 37 S.W.3d 304, 307 (Mo.App.2000).

In Petitioner's first point on appeal, he contends there was no substantial evidence to support the judgment because Finley lacked probable cause to arrest Petitioner for operating his vehicle in an intoxicated condition. We disagree.

Prior to Petitioner's arrest, Finley possessed the following information concerning the accident: (1) Petitioner's vehicle was the only one involved in the accident; (2) it appeared to have resulted from driver error, rather than weather conditions; (3) Finley found a beer can in the cab and observed a wet spot in the floorboard where it appeared something had spilled; (4) Petitioner admitted drinking five beers before the accident; (5) he smelled strongly of alcohol; (6) there was vomit on the floor; (7) his eyes were bloodshot and glassy; (8) his speech was slurred; and (9) he refused to submit to a PBT field sobriety test. Under the circumstances of this case, these facts are sufficient to warrant the belief by a prudent, cautious and trained police officer that Petitioner had been driving his vehicle while intoxicated. *See, e.g., Berry v. Director of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994) (driver's involvement in one-car accident, smell of alcohol on his breath, slurred speech, watery eyes and the presence of empty beer cans in his vehicle provided probable cause to arrest him for driving while intoxicated); *Rinne v. Director of Revenue*, 13 S.W.3d 658, 661 (Mo.App.2000) (driver's involvement in one-car accident, odor of intoxicants on his breath and admissions that he had been drinking and was the only person in the car provided probable cause to arrest him for driving while intoxicated); *Marsey v. Director of Revenue*, 19 S.W.3d 176, 177–78 (Mo.App.2000) (probable cause to arrest for driving while intoxicated existed because of person's involvement in one-car accident; strong odor of alcohol on his breath; admission of drinking; admission of being the driver; wa-

tery, bloodshot and dilated eyes; and refusal to participate in field sobriety test).

Petitioner's argument that probable cause was lacking is based on the premise that Finley had to perform some other field sobriety tests after Petitioner refused to submit to the PBT. Petitioner asserts that, despite the broken leg he had received in the crash, he could have performed other field sobriety tests like reciting the alphabet, counting or touching his finger to his nose. This argument is unpersuasive for three reasons.

First, an officer may develop reasonable grounds to arrest a person for driving while intoxicated without performing any field sobriety tests at all. *See, e.g., Howdeshell v. Director of Revenue*, 184 S.W.3d 193, 198 (Mo.App.2006); *Porter v. Director of Revenue*, 168 S.W.3d 147, 151 (Mo.App.2005); *Edmisten v. Director of Revenue*, 92 S.W.3d 270, 274 (Mo.App. 2002); *Saladino v. Director of Revenue*, 88 S.W.3d 64, 70–71 (Mo.App.2002); *Chancellor v. Lohman*, 984 S.W.2d 857, 858 (Mo. App.1998). A field sobriety test is not mandatory; it merely supplements the officer's other observations in the overall determination of whether there is probable cause to arrest. *See Chancellor*, 984 S.W.2d at 858. In *Berry* and *Rinne*, the officers had sufficient information to establish probable cause for an arrest without even asking the subject to perform a field sobriety test. *Berry*, 885 S.W.2d at 328; *Rinne*, 13 S.W.3d at 661. The same is true here. Putting aside for the moment Petitioner's refusal to submit to a PBT, the other information in Finley's possession was sufficient to establish probable cause to arrest.

Second, Petitioner refused to submit to the PBT. This is a type of field sobriety test because the results can be used by the officer to establish probable cause. *See* § 577.021. The refusal to submit to the

PBT is evidence supporting a reasonable belief by Finley that Petitioner was intoxicated. *See, e.g., Flaiz v. Director of Revenue*, 182 S.W.3d 244, 249 (Mo.App.2005); *Cain v. Director of Revenue*, 130 S.W.3d 1, 6–7 (Mo.App.2004); *Hockman v. Director of Revenue*, 103 S.W.3d 382, 385 (Mo.App. 2003); *Edmisten*, 92 S.W.3d at 274. When this additional factor is added to the probable cause fact matrix, the trial court had before it ample evidence to support the conclusion that Finley had probable cause to arrest Petitioner for driving while intoxicated. *See Marsey v. Director of Revenue*, 19 S.W.3d 176, 177–78 (Mo.App.2000).

Third, Finley testified that the only field sobriety test which Petitioner could perform, due to his injuries, was the PBT. It was up to the trial court to decide this fact question. The record would reasonably support the inference that Petitioner's injuries prevented him from performing any other field sobriety tests, but the court made no specific finding on that issue. Considering the finding to have been made in accordance with the result reached, we deem the issue to have been decided adversely to Petitioner. *Hawk v. Director of Revenue*, 943 S.W.2d 18, 20 (Mo.App.1997). The trial court's determination of that fact issue is binding on us. *Id.* Point I is denied.

■ In Point II, Petitioner once again challenges the trial court's decision on the "reasonable grounds" issue, but he takes a somewhat different tack. Petitioner contends the judgment is against the weight of the evidence because Finley lacked reasonable grounds to believe Petitioner was driving his vehicle in an intoxicated condition. According to Petitioner, this is so because: (1) during Woosley's trial testimony, he did not mention any indications of intoxication that he observed at the scene or while transporting Petitioner to the hospital; and (2) Finley reached his conclusion as to intoxication some time later at the hospital.

The first prong of this argument may be quickly dispatched. The determination of whether there is probable cause to arrest is determined by the information in the officer's possession prior to the arrest. *York v. Director of Revenue*, 186 S.W.3d 267, 270 (Mo. banc 2006); *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc.2002). It is undisputed that Woosley first spoke to Finley after Petitioner was already under arrest. Thus, Woosley's knowledge about Petitioner's condition is irrelevant to the probable cause determination because that information was not communicated to Finley prior to Petitioner's arrest.[4] *See Cain*, 130 S.W.3d at 7; *Howard v. McNeill*, 716 S.W.2d 912, 915 (Mo.App.1986).

■ In the second prong of Petitioner's argument, he contends the judgment is against the weight of the evidence because Finley could not have developed reasonable grounds to believe Petitioner had been driving while intoxicated when that

4. Petitioner's argument suggests that Woosley's testimony was somehow exculpatory. The record does not support that assertion. Woosley was called by the Director to testify about Petitioner's removal from the scene and transportation to the hospital. The witness was not asked any specific questions on direct or cross-examination about whether Petitioner exhibited indicia of intoxication. That information was contained in Finley's narrative supplement to his Alcohol Influence Report, which the court admitted in evidence. Ac-cording to the narrative, Woosley approached Finley after Petitioner had been arrested and reported the following information: "[Petitioner] stated that he had smoked some pot earlier in the evening and had drank approximately six beers. He also stated that [Petitioner] had vomited while in route to the hospital." We fail to discern how knowing this additional information would have undermined Finley's determination that he had probable cause to believe Petitioner had been driving while intoxicated.

decision was made at the hospital two hours after the accident. We disagree. We have already recounted the information in Finley's possession prior to Petitioner's arrest. As we decided in ruling on Petitioner's first point, this information was sufficient to support the court's judgment that Finley had reasonable grounds to arrest Petitioner for driving while intoxicated. In ruling on Point II, we hold that the court's finding is not against the weight of the evidence. There was no evidence in the record that Petitioner consumed any alcohol after the accident. Therefore, all of the indicia of intoxication observed by Finley at the hospital were attributable to alcohol Petitioner admittedly consumed prior to the collision. That being the case, the two-hour interval between the accident and the arrest did not adversely affect Finley's probable cause determination. *See McFall v. Director of Revenue*, 162 S.W.3d 526, 532–33 (Mo.App. 2005); *Misener v. Director of Revenue*, 13 S.W.3d 666, 668 (Mo.App.2000), *overruled in part by Verdoorn v. Director of Revenue*, 119 S.W.3d 543 (Mo. banc 2003).[5] Point II is denied, and the judgment of the trial court is affirmed.

BARNEY and LYNCH, JJ., concur.

---

5. Petitioner contends that *Pontius v. Director of Revenue*, 153 S.W.3d 1 (Mo.App.2004), supports his argument that Finley lacked probable cause to arrest. In *McFall*, we discussed *Pontius* at length and explained why it was factually dissimilar and, therefore, inapposite. *McFall*, 162 S.W.3d at 533 n. 8. Those same factual differences exist in the case at bar and again render *Pontius* inapposite.