Tiffany N. BRUCE, Appellant,

v.

STATE of Missouri, DEPARTMENT
OF REVENUE, Respondent.

No. WD 71649.

Missouri Court of Appeals,
Western District.

Oct. 26, 2010.

Jeffrey S. Eastman, Esq., Gladstone, MO, for appellant.

Jonathan H. Hale, Esq., Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES E. WELSH, Judge, CHARLES E. ATWELL, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

Tiffany Bruce appeals from a circuit court judgment upholding the administrative revocation of her driving privileges for refusing to submit to a chemical analysis of her breath under Missouri's Implied Con-

sent Law, Section 577.020.[1] Bruce contends the Director of Revenue failed to prove that: (1) the arresting officer had reasonable grounds to believe she was driving while intoxicated; and (2) Bruce refused to submit to a chemical analysis of her breath. For reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

On March 23, 2009, Officer Gregory, of the Kansas City Police Department, observed Bruce attempting to pull out of a parallel parking spot located in front of a bar in Westport. Her car bumped a taxi cab parked behind her. Bruce pulled forward and proceeded to back up again when the cab moved away. Once on Westport Road, Bruce made a wide right turn heading south on Broadway and then pulled into the right lane without using her turn signal. Officer Gregory activated his lights and siren. Bruce stopped in the middle of the intersection at 43rd and Broadway, so Officer Gregory ordered her to exit the intersection and pull over.

Upon making contact with Bruce, Officer Gregory noticed a strong smell of alcohol and observed her watery, bloodshot, "glossy" eyes. Bruce had slurred speech and swayed when she walked. She admitted to consuming two beers that evening. Officer Gregory suspected Bruce was intoxicated but was unable to complete field sobriety tests due to heavy winds in the area. He transported Bruce to the police station and conducted a second set of sobriety tests. Officer Gregory arrested Bruce for driving while intoxicated ("DWI") and careless driving.

Officer Gregory read the implied consent form to Bruce, and she agreed to submit to a chemical breath test of her blood alcohol content. Bruce made three attempts to take the test on the Intoxylizer 5000, which registered "AIR BLANK" on the first and third attempts, and "REFUSED" on the second attempt. Officer Gregory noted that Bruce "was not blowing properly" in that she gave only "half blows" and picked up the mouthpiece in her mouth and then let it drop to the ground. He concluded that Bruce "[r]efused by not providing a valid sample."

On March 24, 2009, the Director of Revenue ("Director") notified Bruce that her driving privileges were revoked for one year for refusal to submit to a chemical breath test. Bruce timely filed an application for a hearing in the circuit court. The Director's case was submitted through the records of the Department of Revenue, including the Alcohol Influence Report ("AIR") and narrative prepared by Officer Gregory. Bruce testified at the hearing that she was arrested for DWI at the scene and that she tried to perform the breath test at the police station, but she was crying, upset, and unable to do so.

Following the hearing, the circuit court entered a judgment in favor of the Director and upheld the revocation. The court made findings that Officer Gregory had reasonable grounds to arrest Bruce for DWI, and that Bruce refused to submit to a chemical test of her blood alcohol content. Bruce appeals.

### STANDARD OF REVIEW

In this court-tried case, we must affirm the judgment unless there is insufficient evidence to support it, it is against the weight of the evidence, or it declares or applies the law erroneously. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). We view the evidence in a light most favorable to the judgment,

---

1. All statutory references are to Revised Statutes of Missouri (2000) as updated by the Cumulative Supplement (2009) unless otherwise noted.

and where, as here, the facts relevant to an issue are contested, we give deference to the circuit court's assessment of that evidence. *Id.*

### ANALYSIS

■ At a hearing on the revocation of driving privileges for refusal to submit to a chemical test, the circuit court shall only determine: (1) whether the driver was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) whether the driver refused to submit to the chemical test. § 577.041.4. The Director has the burden of proving all three elements by a preponderance of the evidence. *Cain v. Dir. of Revenue*, 130 S.W.3d 1, 5–6 (Mo.App. 2004). If the Director fails to meet the burden of proof on any of the elements, the court must reinstate the driving privileges. *Akers v. Dir. of Revenue*, 193 S.W.3d 325, 327–28 (Mo.App.2006).

In this case, there is no dispute that Bruce was arrested. Bruce brings two points on appeal challenging the second and third elements of the circuit court's determination.

### Reasonable Grounds

In Point I, Bruce contends the circuit court erred in determining that Officer Gregory had reasonable grounds to believe she was driving while intoxicated. Bruce argues the court's finding is unsupported by the evidence and against the weight of the evidence because the Director's evidence was contradictory and conclusory as to what field testing occurred and when.

Bruce disputes the timing of her arrest for purposes of determining whether Officer Gregory made a reasonable assessment of her condition. She testified that she was arrested for DWI at the scene before field sobriety tests were completed. She argues that probable cause exists only where the arresting officer's knowledge of the facts and circumstances are sufficient to lead a reasonable person to believe a suspect has committed an offense. *State v. Riley*, 704 S.W.2d 691, 693 (Mo.App. 1986). She further argues "[p]robable cause must exist at the time of the arrest[;]" that "[a]n officer cannot bootstrap and use facts learned after the arrest to show he had probable cause to effect the arrest." *Domsch v. Dir. of Revenue*, 767 S.W.2d 121, 123 (Mo.App.1989); *Mullen v. Dir. of Mo. Dep't of Revenue*, 288 S.W.3d 319, 322 (Mo.App.2009).

Officer Gregory did not testify at the hearing. The Director's case was submitted based on the reports and records prepared by the Officer. Bruce argues it was not possible for the court to decipher from the Director's evidence what testing occurred pre-arrest in the field from what was administered post-arrest at the station and the results of each. She also argues the court could not determine from the report the extent and nature of Gregory's qualifications to render any opinions regarding her impairment nor any basis upon which he may have formulated those opinions.

■ We disagree. We review probable cause determinations *de novo* under an abuse of discretion standard giving deference to the trial court's inferences drawn from the facts in the record. *White*, 321 S.W.3d at 310. Probable cause exists when a police officer observes illegal operation of a motor vehicle and indicia of intoxication upon contacting the motorist. *Id.* at 309. The level of proof necessary to show probable cause is substantially less than that required to establish guilt beyond a reasonable doubt. *Id.* The court is required to assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Id.*

■ Field sobriety tests are not required for an officer to develop reasonable grounds for a DWI arrest. *Findley v. Dir. of Revenue*, 204 S.W.3d 722, 727 (Mo. App.2006). Such tests merely supplement the officer's other observations in the overall probable cause determination. *Id.* This is particularly so where an officer reasonably believes an offense has occurred and weather conditions or other safety considerations preclude further investigation at the scene. *See Hunt v. Dir. of Revenue*, 10 S.W.3d 144, 146, 148 (Mo.App.1999).

■ The Director's evidence established that Officer Gregory had observed Bruce's unusual operation of a motor vehicle with multiple traffic violations. Upon stopping Bruce, he observed classic signs of intoxication: a strong odor of alcohol; watery, bloodshot, and "glossy" eyes; slurred speech; swaying; and an admission of drinking. The Officer's report indicates that he was unable to complete field sobriety tests at the scene due to the weather. He therefore transported Bruce to the police station and administered a second set of field sobriety tests. Based on the chronology of events reported by Officer Gregory, he arrested Bruce at the police station after she performed poorly on three of the field sobriety tests.

Although Bruce testified that she was arrested at the scene, the circuit court was not required to credit her account of the incident. *White*, 321 S.W.3d at 312 ("[Th]e trial court is free to believe or disbelieve any or all of the contested evidence at trial.") The Director presented contrary evidence, which the court found credible. The court was free to believe the Director's evidence, even without live testimony from Officer Gregory or further information about his qualifications.

The Officer's report cites two arrests: one for DWI and one for careless driving. Even if there had been an arrest at the scene, such initial arrest could have been for careless driving. Since Officer Gregory transported Bruce to the police station for additional field sobriety tests, it does not make logical sense that he would arrest her for DWI before completing his investigation. Officer Gregory was able to rely upon his observations of Bruce's traffic violations, her physical appearance and conduct when she got out of the car, and her performance on the field sobriety tests in making his assessment. The record supports a finding that the Officer arrested Bruce for DWI only after he had reasonable grounds to believe she drove while intoxicated. Point I is denied.

**Refusal to Submit to Chemical Test**

In Point II, Bruce argues the evidence did not support the court's finding that she refused to submit to the chemical breath test. At the hearing, Bruce testified that she agreed to take the test on the Intoxilyzer 5000. She "tried several times," but she was crying and the device "wasn't reading anything." She complained when Officer Gregory asked her to sign the refusal form because she was trying to take the test, but she was very upset at the time.

Bruce asserts she was not allowed three minutes to complete the test on the Intoxilyzer 5000, and there was no print-out showing an "INSUFFICIENT TEST." If, she contends, as Officer Gregory's notes suggest, she was not providing a "valid sample," the status code "INSUFFICIENT SAMPLE/INVALID TEST/SUBJECT WOULD NOT PROVIDE A VALID SAMPLE" would have appeared on the screen or the breath test ticket after the three minute period. Instead, the status codes "AIR BLANK," then "SUBJECT TEST REFUSED" and "AIR BLANK" were printed on the breath test tickets for the three attempts she made in less than two minutes. Bruce argues that Officer Gregory improperly aborted the testing process before she had an opportunity to

complete it and, therefore, the court erred in concluding that she refused to submit to the test.

■ A "refusal" occurs when a person fails, of his or her own volition, to do what is necessary in order for the test at issue to be performed. *See Bogart v. Dir. of Revenue*, 185 S.W.3d 286, 288 (Mo.App. 2006). The Director presented evidence of Bruce's refusal based on Officer Gregory's written report and narrative. The Officer wrote that Bruce "[r]efused" by not providing a valid breath sample. He described her as "not blowing properly" and "doing half blows." He also explained that Bruce picked up the device with her mouth and let it drop to the ground.

Officer Gregory's narrative is further supported by the ticket print-outs from the Intoxylizer 5000, which show that Bruce made three attempts to complete the test. The first and third attempts registered as "AIR BLANK," which, according to the Breath Alcohol Operator Manual (Petitioner's Exhibit 4, p. 78), means the machine is establishing a zero reference point with the ambient air to be sure residual substances are cleansed from the internal chambers of the machine and the signal coming from the detector is stable. This step in the machine's sequence occurs before the arrestee blows into it. The "AIR BLANK" status code indicates that Bruce did not blow into the machine on either the first or third attempt.

The second attempt registered "RE-FUSED." This message appears when the subject refuses to make an attempt and the Officer hits the "R" on the keyboard to end the testing sequence. This ticket print-out provides clear evidence that Officer Gregory believed Bruce's failure to provide an adequate sample was volitional. *See Dixon v. Dir. of Revenue*, 118 S.W.3d 302, 307 n. 9 (Mo.App.2003).

■ The operating manual states that the Intoxylizer 5000 "allows a three-minute window" to complete the test. (Petitioner's Exhibit 4, p. 79). However, there is nothing in the manual that requires the full three minutes be given. Bruce also has not cited any other authority mandating a minimum time frame for the test. Here, there is no dispute that Bruce had three opportunities to take the test, and she failed to provide a valid breath sample on any of them. Under these circumstances, it was not unreasonable for Officer Gregory to cease the testing efforts before the expiration of each three-minute period.

Bruce also complains that the evidence ticket did not indicate an "INSUFFI-CIENT" or "INVALID" test. According to the manual, those codes do not register until the end of the three minute period (Petitioner's Exhibit 4, p. 79). Because Bruce refused to blow into the machine properly, her testing did not last three minutes and the machine codes registered what occurred on those attempts: "AIR BLANK" and "REFUSED."

The Director's evidence was sufficient to prove that Bruce volitionally refused to submit to the chemical breath test. Although Bruce testified that she was unable to blow properly because she was crying and upset, the court could disbelieve that evidence and find that Officer Gregory's report and the testing records provided a more credible account. The record supports the court's decision to uphold the revocation of Bruce's driving privileges based on her refusal to submit to testing. Point II is denied.

CONCLUSION

We affirm the circuit court's judgment.

All Concur.