Donald DIXON, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, Respondent–Appellant.

No. 25413.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 29, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Schmid, Jefferson City, for appellant.

Kenneth M. Hayden, Versailles, for respondent.

KENNETH W. SHRUM, Judge.

Missouri's Director of Revenue ("Director") revoked the driving privileges of Donald Dixon ("Dixon") for allegedly refusing to submit to a chemical test to ascertain the alcohol content of his blood under Missouri's Implied Consent Law (§ 577.020).[1] Dixon petitioned the circuit court for review of Director's decision. The case was submitted to the trial court entirely on Director's records, and the trial court set aside the revocation and ordered Director to reinstate Dixon's driving privileges. We reverse and remand with directions.

## STANDARD OF REVIEW

We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620[6] (Mo.banc 2002). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary. *Wright v. Fisher,* 89 S.W.3d 548, 549 (Mo.App.2002).

■ "If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Hinnah,* 77 S.W.3d at 620[8]. Even though a case is submitted solely on Director's records, an appellate court must give deference to the trial court's resolution of conflicting facts contained therein. *Jarrell v. Dir. of Revenue,* 41 S.W.3d 42, 46[9] (Mo.App.2001).

## FACTS

At approximately 2:14 A.M. on August 8, 2002, deputy sheriff Brian Fiene ("Fiene") attempted to stop the driver of a Cadillac when he witnessed it cross over the double-yellow centerline of a highway. Fiene activated his siren and emergency lights, but the driver of the car, later identified as Dixon, refused to stop. As Fiene followed the Cadillac, he saw it cross the centerline five times at speeds ranging from 20 to 25 miles per hour. The chase ended after approximately three minutes of pursuit when Dixon "stopped the vehicle in the roadway."

Fiene approached the car and repeatedly ordered Dixon to exit the vehicle because "he was under arrest." Dixon refused and locked his car doors, but he then "rolled the window down all the way." After continuous refusals to exit the car, Fiene "attempted to grab him and pull him from the vehicle but he struck [Fiene's] hands and arms several times and pushed [Fiene] away." After applying pepper spray to Dixon's face, Fiene was finally able to pull him from the car.

Once outside the Cadillac, Dixon continued to resist arrest and refused "to lie on the ground or place his hands behind his back." Consequently, at 2:22 A.M., Fiene "swept his feet from under him and threw him onto the ground where he was placed in double locked wrist restraints. Dixon then called [Fiene] a 'jackoff' and said, 'I've dealt with you cocksuckers before.'"

Because Dixon stopped the car in the middle of the road, Fiene contacted a tow-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

ing company to remove the vehicle. In preparing for the car being towed, Fiene searched the Cadillac and found a "750 ML Barton liquor bottle that was about 2/3 empty" on the floorboard. Dixon was then taken to the sheriff's department.

After arrival, Dixon refused to perform field sobriety tests, and Fiene observed several indicia of intoxication such as a strong odor of intoxicants, bloodshot eyes, slurred speech, and an inability to balance himself. At 3:18 A.M., Fiene read Dixon his Miranda rights.[2] Dixon was then asked to take a chemical test of his breath, but he refused. At 3:22 A.M., Fiene informed Dixon that he was "under arrest for driving while intoxicated." Based on the aforementioned events, Dixon was ultimately charged with driving while intoxicated ("DWI"), resisting arrest, failure to drive on the right half of the roadway, careless and imprudent driving, failing to yield to an emergency vehicle, and failing to wear a seat belt.

Upon notification of his refusal, Director revoked Dixon's driving privileges for one year. Dixon then petitioned the circuit court for review, and the parties stipulated to submit the case based on Director's records which included Fiene's Alcohol Influence Report ("AIR") and his narrative report concerning the events. Upon its review, the trial court ruled favorably to Dixon. This appeal by Director followed.

### Point I: Probable Cause to Arrest Issue

One basis for the trial court's judgment was a finding that "the Director . . . has failed to provide competent evidence that the arresting officer had reasonable grounds to believe that [Dixon] was driving a motor vehicle while in an intoxicated condition *at the time of or prior to the arrest . . . .*" (Emphasis supplied.) The court, however, also found "that [Dixon] was *arrested for acts other than DWI.*" (Emphasis supplied.) The trial court noted that Fiene's observations of Dixon's intoxication "were made *after* the arrest, and even *after* [Dixon] refused to take the tests." It appears that the trial court mistakenly believed that Fiene must have probable cause to arrest Dixon for DWI *at the same time* that he arrested Dixon "for acts other than DWI."[3] Stated differently, the court misapplied the law when it found that Fiene was precluded from gaining probable cause to arrest for DWI *after* arresting Dixon for other offenses.

Under section 577.041, a person who refuses to take a breath test shall have their license revoked, but that person may request a hearing for review before a court in the county in which the stop or arrest occurred. *Bucher*, 98 S.W.3d at 81. At this hearing, the court can only determine the following: (1) whether the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe the person was driving a motor vehicle in an intoxicated condition; and (3) whether the person refused to submit to the chemical test. § 577.041.4; *Hinnah*, 77 S.W.3d at 620.

Nothing in section 577.041 indicates that the person must be arrested or stopped specifically for DWI. It has been stated:

---

2. In *Miranda v. Arizona,* the United States Supreme Court set out what have come to be known as "the *Miranda* warnings" as a "procedural safeguard" designed to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630[66,67], 16 L.Ed.2d 694.

3. " 'Reasonable grounds' as discussed in section 577.041.4, is considered virtually synonymous with probable cause." *Bucher v. Dir. of Revenue,* 98 S.W.3d 79, 81[3] (Mo.App.2003).

"Section 577.041 does not require the arresting officer to have reasonable grounds before he makes the initial stop. It is sufficient if, after the stop, the arresting officer observes sufficient indicia of intoxication to reasonably believe the driver was driving a motor vehicle while intoxicated."

*Gelsheimer v. Dir. of Revenue,* 845 S.W.2d 107, 108[2] (Mo.App.1993). "[P]robable cause to arrest for an alcohol-related traffic violation which supports an administrative license suspension may be developed after the officer stops the motorist, regardless of whether the officer had probable cause for the stop." *Peters v. Dir. of Revenue,* 35 S.W.3d 891, 895[4] (Mo.App. 2001).[4]

■■■■ Here, the "initial stop" was an arrest for acts other than DWI.[5] Thereafter, Fiene discovered a nearly empty bottle of liquor in Dixon's car. Dixon refused to take any field sobriety tests. Fiene had previously witnessed Dixon crossing the centerline of the highway a number of times. Dixon was combative, evasive, and verbally and physically abusive. These factors indicated Dixon was intoxicated, and the combination thereof gave Fiene reasonable grounds to believe that Dixon was driving a motor vehicle while intoxicated.[6] The trial court erred in finding otherwise.[7]

In his brief, Dixon appears to argue, *inter alia,* that the arrest for DWI occurred at 2:22 A.M., and at that point, Fiene did not have probable cause to arrest for that reason. The record clearly refutes the proposition that the 2:22 A.M. arrest was for DWI. The court specifically found that he was arrested at that time "for acts other than DWI." Moreover, the record clearly shows that Dixon was read *Miranda* rights at 3:18 A.M., and Fiene informed him that he "was under arrest for driving while intoxicated" at 3:22 A.M. As noted above, at that time, Fiene possessed the requisite probable cause to arrest Dixon for driving while intoxicated

4. We note here that *Peters* involved suspension of driving privileges under section 302.505, but courts routinely utilize cases of this nature in discussing revocations under section 577.041. *See, e.g., Brown v. Dir. of Revenue,* 85 S.W.3d 1, 7 (Mo.banc 2002); *Roberts v. Wilson,* 97 S.W.3d 487, 492 n. 5 (Mo.App.2002); and *St. Pierre v. Dir. of Revenue,* 39 S.W.3d 576, 579 (Mo.App.2001).

5. Both an arrest and a traffic stop are seizures within the meaning of the Fourth Amendment. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Miller,* 894 S.W.2d 649 (Mo.banc 1995); *State v. Taber,* 73 S.W.3d 699 (Mo.App.2002); and *State v. Pfleiderer,* 8 S.W.3d 249 (Mo.App. 1999). An arrest is considered a more intrusive seizure than a *Terry* (traffic) stop. *Miller,* 894 S.W.2d at 651–52; *Pfleiderer,* 8 S.W.3d at 254–55[12].

6. *See, e.g., Edmisten v. Dir. of Revenue,* 92 S.W.3d 270, 274 (Mo.App.2002) (refusal to perform field sobriety tests); *Francis v. Dir. of Revenue,* 85 S.W.3d 56, 59 (Mo.App.2002) (reckless driving and refusal to pull over); *State v. Cross,* 34 S.W.3d 175, 177–78 (Mo. App.2000) (beer bottles in vehicle); *State v. Bradley,* 57 S.W.3d 335, 341 (Mo.App.2001) (uncooperative with police); *Harper v. Dir. of Revenue,* 14 S.W.3d 614, 617 (Mo.App.1999) (failure to stay in lane); *State v. Vanosdol,* 974 S.W.2d 650, 653 (Mo.App.1998) (belligerent behavior); and *State v. McCarty,* 875 S.W.2d 622, 623 (Mo.App.1994) (use of profanity).

7. Cases exist in other jurisdictions that are in accord with *Peters,* 35 S.W.3d at 895, and *Gelsheimer,* 845 S.W.2d at 108[2], i.e., that it is entirely permissible for a police officer to gain probable cause to arrest for DWI after an initial arrest for other offenses. *See, e.g. State, Dept. of Hwy. Saf. v. Whitley,* 846 So.2d 1163, 1166–67 (Fla.App.2003); *State v. Jackson,* 1999 Ohio App. LEXIS 4601 (Ohio App. 1999); and *Johnson v. Motor Vehicle Div., Dept. of Revenue,* 38 Colo.App. 230, 556 P.2d 488, 490 (1976).

under section 577.020 and section 577.041.[8] Director's first point has merit.

### Point II: Alleged Ambiguity in Alcohol Influence Report

The second basis for the trial court's judgment was its finding that Director failed to provide competent evidence that Dixon refused to submit to the chemical breath test. In that regard, the court found that the AIR "was further contradictory in that both the refusal box was checked as well as all boxes in the DataMaster checklist." In using this alleged contradiction as a basis for finding in Dixon's favor, the court relied upon *Reece v. Dir. of Revenue*, 61 S.W.3d 288 (Mo.App. 2001).

In *Reece*, the appellate court upheld the trial court's factual finding that the driver did not refuse to submit to a breath test. *Id.* at 291–92. The *Reece* court noted that the case was submitted solely on the Director's records and found those records to contain a discrepancy relating to the alleged refusal. *Id.* There were three separate places on the AIR wherein officers wrote that the driver refused to submit to the test. The discrepancy arose because the DataMaster checklist was filled out which the court believed "indicate[d] a breath test was performed." *Id.* at 292. Also, the court noted that the certification section was completed, but the officer wrote "Refused" in the box for blood alcohol concentration. *Id.* The *Reece* court

stated "it is not clear why this section would be completed if Reece refused to submit to a test." *Id.*

■ Here, the facts are nearly identical, but one notable distinction renders *Reece* inapposite. The AIR in this case is identical to that in *Reece*, i.e., the refusals were marked in the appropriate places, the DataMaster checklist was completed, and the certification section was filled out with "Refused" written in the space for blood alcohol concentration. Moreover, Fiene's narrative report revealed, "Dixon was read his Miranda rights at 0318 hours and implied consent at 0322 hours requesting that he submit to a chemical test of his breath to determine the alcohol content of his blood. Dixon refused to take the test." The distinction between this case and *Reece* is that the DataMaster evidence ticket clearly indicated that Dixon "REFUSED" to take the test.[9]

■ The record before this court reveals no discrepancy or ambiguity as present in *Reece*. Unlike *Reece*, the evidence clearly indicates that no breath test was conducted. The evidence of Dixon's refusal was uncontradicted; consequently, the trial court erred when it found that Director failed to provide competent evidence of his refusal. We need not defer to the trial court's judgment when the evidence is uncontradicted. *Hinnah*, 77

---

8. The recitation of *Miranda* warnings, an announcement that he was under arrest for DWI, a reading of the implied consent form, and the issuance of a citation for DWI were sufficient to effectuate Dixon's arrest under the circumstances faced by officer Fiene. *Cf. Smither v. Dir. of Revenue*, —— S.W.3d ——, ——, 2003 WL 21487318 (W.D. No. 61535, June 30, 2003); *Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 69 (Mo.App.2002); and *State v. Setter*, 721 S.W.2d 11, 17 (Mo.App.1986).

9. It is reasonable to infer that this checklist was filled out in anticipation of a breath test.

The DataMaster evidence ticket indicated that an "internal standard" was "verified" prior to Dixon's refusal. Consequently, even if a breath test were performed or attempted, the evidence ticket conclusively showed the test was refused. The evidence ticket would indicate a refusal for reasons such as (1) a driver initially agrees, but refuses after the machine was started, or (2) the person failed to provide a sufficient sample by not blowing hard enough.

S.W.3d at 620. Director's second point has merit.

The trial court's judgment is reversed, and the case is remanded with directions to the trial court to reinstate the Director's decision to revoke Dixon's driving privileges.

PARRISH, J., and RAHMEYER, C.J.-P.J., concur.