**Mark K. RICHARDSON, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, Respondent–Appellant.**

No. 26580.

Missouri Court of Appeals, Southern District, Division Two.

June 27, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault III, Special Asst. Atty. Gen., Jefferson City, MO, for appellant.

Carl M. Ward, Chesterfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

The Director of Revenue ("Director") revoked the driving privileges of Mark K. Richardson ("Richardson") for allegedly refusing to submit to a chemical test of his blood alcohol content pursuant to § 577.041.[1] Thereafter, Richardson filed a petition in circuit court requesting a trial *de novo*, and the only evidence submitted in the case was the Director's records. Because these records were internally inconsistent with respect to whether Richardson refused the breathalyzer test, the trial court set aside the revocation and ordered the Director to reinstate Richardson's driving privileges. The Director appealed. She argues that her records were sufficient to establish a *prima facie* case

for revocation, which Richardson failed to rebut. We affirm the trial court's judgment.

## I. Standard of Review

■■■ Our review of the trial court's judgment after a trial *de novo* is conducted pursuant to the familiar standards of Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] *Ruth v. Director of Revenue*, 143 S.W.3d 741, 744 (Mo.App.2004). "This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment, and we disregard all evidence and inferences to the contrary. *Dixon v. Director of Revenue*, 118 S.W.3d 302, 304 (Mo.App.2003). "If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Middlemas v. Director of Revenue*, 159 S.W.3d 515, 517 (Mo.App. 2005). When a case is submitted solely on the Director's records, however, "an appellate court must give deference to the trial court's resolution of conflicting facts contained therein." *Dixon*, 118 S.W.3d at 304; *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 46 (Mo.App.2001).

1. All references to statutes are to RSMo (2000).

2. All references to rules are to the Missouri Court Rules (2005). *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

## II. Summary of the Facts

On March 25, 2004, Joplin police officer Randy Black ("Officer Black") arrested Richardson for driving while intoxicated. Officer Black transported Richardson to the jail, where he was informed of his rights under Missouri's implied consent law. *See* § 577.020. Some portions of Officer Black's written report suggest that Richardson initially agreed to take a breath test, but changed his mind while the Intoxilyzer 5000 was being prepared to conduct the test.[3] Other portions of the written report suggest that Richardson did not refuse to be tested.

Based on Richardson's purported refusal to be tested, Officer Black gave Richardson a Missouri Department of Revenue form revoking his driving privileges for one year. Thereafter, Richardson filed a timely application for review of his revocation in circuit court. The case was scheduled to be heard on August 27, 2004. Richardson served Officer Black with a subpoena to testify on Richardson's behalf.

At the hearing, the Director's evidence consisted of Exhibit A, which was a certified copy of 15 pages of Department of Revenue records concerning Richardson's license history. For purposes of this appeal, the only relevant document in this exhibit was the Alcohol Influence Report ("AIR"). Notably, Exhibit A did not include the test record printed out from the Intoxilyzer 5000.[4] After the Director rested, Richardson presented no evidence. Although Officer Black had been served with a subpoena, he failed to appear and was not available to testify for either party.

Once the evidence was closed, Richardson argued the Director failed to make a *prima facie* case for revocation because Exhibit A contained conflicting information as to whether Richardson actually refused the test. Relying on *Reece v. Director of Revenue*, 61 S.W.3d 288 (Mo.App.2001), Richardson asked the court to set aside the revocation.

The trial court's judgment contains a thorough and careful review of the conflicting information in the AIR. The court first considered the evidence supporting the Director's contention that Richardson refused the test:

> On the one hand, in the narrative section of the report, Officer Black wrote that [Richardson] first agreed to take the breath test and then changed his mind and refused the test. On page 3 of the Alcohol Influence Report form, Officer Black wrote "REFUSED" in the bottom right corner of the page, in the box provided for the officer to write [Richardson's] blood alcohol concentration. On the same page, at the top, the officer checked the "NO" box following the question: "Having been informed of the reasons for requesting the test(s), will you take the test(s)?"

The court then considered the evidence supporting Richardson's contention that he did not refuse the test:

> On the other hand, Officer Black also completed the operational checklist and certification section on page 3 of the Alcohol Influence Report form. Under 19 CSR 25–30.011(5)(A), "An operational checklist, including the certification sec-

---

3. This device is one of several breath analyzer machines approved for use by the Missouri Department of Health. *See* 19 C.S.R. 25–30.050(1).

4. When the Intoxilyzer 5000 is used, the procedures that must be followed by the operator are set out in Form #5. *See* 19 C.S.R. 25–30.060(1). Step 6 of the operational checklist for the Intoxilyzer 5000, as set out in Form #5, states: "When test record is printed, remove test record and attach printout to this report."

tion, shall be completed with each breath test at the time of the test, by the individual performing the test." The operational checklist provides as follows:

1. Subject observed for at least 15 minutes by *Ptl. R. Black 8581.* No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period.

2. Assure that power switch is ON and then press the START TEST button.

3. Enter the test record card.

4. Enter subject and officer information.

5. *When display reads PLEASE BLOW, insert mouthpiece and take the subject's breath sample.*

6. When test record is printed remove test record and attach printout to this report.

Officer Black placed slash marks through each of the boxes next to steps 1 through 6 indicating to the court that each step was completed. However, no printout was included in the Director's records. The court concludes that by checking the box next to step 5, Officer Black appears to have taken Mr. Richardson's breath sample. In that case, [Richardson] did not refuse the test.

In addition, Officer Black completed the certification of examination by operator section, which is found just below the operational checklist. The certification section provides that:

AS SET FORTH IN THE RULES PROMULGATED BY THE DEPARTMENT OF HEALTH RELATED TO THE DETERMINATION OF BLOOD ALCOHOL BY BREATH ANALYSIS, I CERTIFY BY COMPLETING THE BELOW THAT:

1. There was no deviation from the procedure approved by the department.

2. To the best of my knowledge the instrument was functioning properly.

3. I am authorized to operate the instrument.

4. No radio transmission occurred inside the room where and *when this test was being conducted.*

Officer Black's name, permit number and other information are then written in the appropriate spaces.... Officer Black completed this certification, thereby certifying, among other things, that the instrument was functioning properly and that no radio transmission occurred inside the room *"when (Mr. Richardson's) test was being conducted."* If the test was conducted, [Richardson] did not refuse the test.

Finally, the trial court considered the fact that "Officer Black, although duly subpoenaed to appear and testify on behalf of [Richardson], failed to appear for trial."

After considering the internal inconsistencies in the Director's evidence, Officer Black's failure to appear and the decision in *Reece,* the trial court concluded the Director did not meet "her burden of proving by a preponderance of the evidence that [Richardson] refused to submit to a breath test."

In the Director's sole point relied on, she contends the trial court erred because the evidence contained in Exhibit A "unequivocally established" a *prima facie* case for revocation which was not rebutted by Richardson.

**III. Discussion and Decision**

■ There were only three issues for the trial court to decide: (1) whether or not Richardson was arrested; (2) whether or not Officer Black had reasonable

grounds to believe that Richardson was driving while in an intoxicated condition; and (3) whether or not Richardson refused the test. Section 577.041.4; *Reece v. Director of Revenue*, 61 S.W.3d 288, 290 (Mo. App.2001). The Director bears the burden of proof as to each issue. *Id.* "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." Section 577.041.5; *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 43 (Mo. App.2001). The only disputed issue below was whether Richardson refused the test.

The trial court relied on *Reece* in concluding that Richardson did not refuse the breath test. The Director, however, argues that this Court's decision in *Dixon v. Director of Revenue*, 118 S.W.3d 302 (Mo. App.2003), supports the Director's position that she made a *prima facie* case for revocation. To resolve this point, we must examine the facts and holdings in *Reece* and *Dixon* to determine which is controlling here.

In *Reece*, the Director attempted to make a *prima facie* case using only Department of Revenue records. The trial court found those records contained a discrepancy relating to Reece's alleged refusal to be tested. *Reece*, 61 S.W.3d at 290. In the officer's narrative report and in other sections of the AIR, the officer wrote that Reece refused the breath test. *Id.* at 291. In another portion of the AIR, however, the officer filled out an operational checklist indicating "a breath test was performed." *Id.* at 292. The officer also completed the certification section, but then he wrote "Refused" in the box for blood alcohol concentration. *Id.* Because of the internal inconsistencies in the AIR, the trial court concluded the Director failed to prove that Reece refused to submit to a breath test. The Eastern District's cogent explanation of why it was required to affirm that factual finding bears repeating here:

> This case demonstrates the difficulties that can arise when the case is submitted on the records and the evidence conflicts. " '[C]aution should be exercised when a suspension case is submitted on the records alone ... submission of a case on the records alone may pose some risks-including the inability to explain discrepancies or to "rehabilitate witnesses"....' " *Jarrell*, 41 S.W.3d at 46 (citation omitted). The arresting officer wrote "refused" in two places on the Alcohol Influence Report and checked a box indicating Reece refused a breath test and wrote in the time. But the officer also completed the middle section of the report's third page, which indicates a breath test was performed. In addition, by completing the report's bottom section, also referred to as the certification section, the officer certified to, among other things, that no radio transmission occurred inside the room where and when the test was being conducted. The officer did write "Refused" in the box for the blood alcohol concentration, but it is not clear why this section would be completed if Reece refused to submit to a test. Given this court's standard of review, we hold that the trial court's judgment that Director did not prove that Reece refused the breath test is supported by substantial evidence and is not against the weight of the evidence.

*Reece*, 61 S.W.3d at 292 (footnote omitted).

*Reece* was recently distinguished by this Court in *Dixon v. Director of Revenue*, 118 S.W.3d 302 (Mo.App.2003), based on "one notable distinction" between the cases. *Id.* at 307. The similarities in *Reece* and *Dixon* involved the manner in which the AIR was completed in each case: "i.e., the refusals were marked in the appropriate places, the DataMaster checklist was com-

pleted, and the certification section was filled out with 'Refused' written in the space for blood alcohol concentration." *Dixon*, 118 S.W.3d at 307. In addition, the officer in *Dixon* wrote in his narrative report that the driver refused to take the test. *Id.* The critical difference between the two cases, however, is that the Director's records in *Dixon* included the DataMaster's printed test result, which we described as an "evidence ticket." *Id.* This evidence ticket "clearly indicated that Dixon 'REFUSED' to take the test." *Id.* Thus, any possible inference that Dixon actually took the breath test—based on the fact that the DataMaster's operational checklist had been completely filled out—was conclusively refuted by the machine's evidence ticket:

> It is reasonable to infer that this checklist was filled out in anticipation of a breath test. The DataMaster evidence ticket indicated that an "internal standard" was "verified" prior to Dixon's refusal. Consequently, even if a breath test were performed or attempted, the evidence ticket conclusively showed the test was refused. The evidence ticket would indicate a refusal for reasons such as (1) a driver initially agrees, but refuses after the machine was started, or (2) the person failed to provide a sufficient sample by not blowing hard enough.

*Id.* at 308 n. 9. Therefore, we reversed the trial court's judgment and remanded the case to reinstate the revocation of Dixon's driving privileges.

In contrast, the Director's records in the case at bar did not include the test result printed out by the Intoxilyzer 5000 after Richardson's arrest. Nevertheless, Director relies on *Dixon* to argue that the operational checklist and certification section, which both indicated that Officer Black took Richardson's breath sample, were obviously filled out in anticipation of a breath test. While that might have been one permissible inference the trial court could have drawn from the internal inconsistencies in the AIR, the court was not bound to do so in the absence of the printed test result conclusively showing, as it did in *Dixon*, that the test was refused. Here, the trial court specifically noted "no printout was included in the Director's records." The court further noted "Officer Black, although duly subpoenaed to appear and testify on behalf of [Richardson], failed to appear for trial." Without such additional evidence to explain the discrepancies in the AIR, *Dixon* simply does not support the Director's argument. Therefore, *Reece* controls the disposition of this appeal.

Under our standard of review, we are required to defer to the trial court's resolution of conflicting facts when a case is submitted solely on the Director's records. *Dixon*, 118 S.W.3d at 304. The AIR in this case was internally inconsistent with regard to whether Richardson refused Officer Black's request to take a breath test. By finding that Director failed to meet her burden of proving Richardson refused the breath test, the trial court resolved this factual dispute against the Director. The trial court's finding is supported by substantial evidence and is not against the weight of the evidence. *See Reece*, 61 S.W.3d at 292. Director's point is denied, and the judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.