Jimmy Don HARLAN, Applicant–
Respondent,

v.

DIRECTOR OF REVENUE, State
of MISSOURI, Respondent–
Appellant.

No. SD 30505.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 24, 2011.

Jonathan H. Hale, Jefferson City, MO, for Appellant.

Tony Skouby and David Simpson, St. James, MO, for Respondent.

DON E. BURRELL, Judge.

██ The Director of Revenue ("Director") appeals a judgment of the circuit court ordering her to reinstate the driving privileges of Jimmy Don Harlan ("Driver"). Director revoked Driver's license under section 577.041[1] in response to Driver's refusal to submit to a breathalyzer test after being arrested for driving while intoxicated.[2] In a single point relied on, Director contends the trial court "misapplied the law, in that [the arresting officer]'s uncontested observations constitute[d] reasonable grounds to believe that

[Driver] was driving while intoxicated." We agree and reverse the decision of the circuit court.

### Factual and Procedural Background

On March 10, 2004, Driver filed a petition under section 577.041.2, asking the circuit court to review and reverse Director's administrative revocation of his driver's license. Just shy of six years after that petition was filed, on February 24, 2010,[3] the matter was finally tried before the circuit court.

The trial began with Director submitting her case by offering Exhibit A, Director's certified records.[4] While acknowledging that the circuit court was required to receive Director's certified records into evidence, Driver's attorney argued that the alcohol influence report ("AIR") used by the arresting officer was on an old form that did not list a certification that the officer had received eight hours of training on the horizontal gaze nystagmus test ("HGN"). Driver's attorney opined that "[w]ithout that statutory foundation I don't believe that the HGN is admissible and should not be considered by the Court as

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2009.

2. "Under section 577.041, a person who refuses to take a breath test shall have their license revoked, but that person may request a hearing for review before a court in the county in which the stop or arrest occurred." *Dixon v. Director of Revenue*, 118 S.W.3d 302, 305 (Mo.App. S.D.2003). "At such a hearing, the trial court can only determine (1) whether the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe the person was driving a motor vehicle in an intoxicated condition; and (3) whether the person refused to submit to the chemical test." *Edwards v. Director of Revenue*, 295 S.W.3d 909, 912 (Mo.App. S.D. 2009). "The Director bears the burden of proof at the hearing." *Id.* "If the court determines any issue not to be in the affirmative,

the court shall order the [D]irector to reinstate the license or permit to drive." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). At the hearing, Driver's attorney admitted elements one and three—that Driver had been arrested and that he had refused to submit to the chemical test.

3. The record does not reveal why Driver waited so long to pursue his request for relief.

4. Those records consisted of Driver's Missouri Driver Record; Director's notice of revocation and temporary driving permit; the alcohol influence report, [the arresting officer]'s arrest report, probable cause statement, and narrative, and a copy of the citations issued to Driver for the offenses of driving while intoxicated and possession of an open container of alcohol in a vehicle.

to whether the officer had reasonable grounds to believe that [Driver] was operating a motor vehicle while intoxicated." Director's attorney did not challenge Driver's lack of foundation argument. Instead, she argued that Director's evidence was sufficient to show under the totality of the circumstances that the officer had "probable cause to arrest" Driver.

The evidence in Exhibit A was as follows. On March 4th or 5th, 2004,[5] at 8:00 p.m., Driver was stopped at a safety checkpoint by Rolla police officer John Frey ("Officer Frey"). Officer Frey was checking passing motorists to see if they had valid driver's licenses and insurance cards. When Officer Frey stopped Driver, he noticed a moderate odor of alcohol coming from Driver's breath and vehicle. After fumbling through his wallet, Driver produced his driver's license. While Driver continued looking for his insurance card, Officer Frey noticed an open can of beer sitting on the center arm rest of Driver's vehicle. When Officer Frey asked Driver whether he had been drinking, Driver said that he "just opened one up."

Officer Frey had Driver exit his vehicle and asked him to submit to a portable breathalyzer test ("PBT"). Driver refused to take the PBT. Officer Frey then administered a series of standardized field sobriety tests, which included: the HGN, the "walk-and-turn" test, and the "one-leg stand" test. During the walk-and-turn, Driver failed to maintain a heel-to-toe stance, commenced the test prior to the completion of the officer's instructions, stopped walking to steady himself, and did not touch his heel to his toe. While performing the one-leg stand, Driver swayed, used his arms to balance himself, and put his foot down.

Officer Frey noted in his AIR that Driver had watery and bloodshot eyes, swayed when walking and turning, used profanity, and had an uncooperative attitude. The AIR also reflects that Officer Frey asked Driver, among other things, the following questions and received the following responses:

Q: WHAT TIME IS IT NOW?

A: 1030 PM

Q: WHAT IS THE DATE?

A: DON'T KNOW

Q: WHAT DAY OF THE WEEK IS IT?

A: DON'T KNOW

Q: WHAT CTY (COUNTY) ARE YOU IN NOW?

A: DON'T KNOW

Q: WHAT DID YOU LAST EAT?

A: I DON'T KNOW

Q: WHEN DID YOU LAST EAT?

A: DON'T KNOW

Q: WHEN DID YOU LAST WORK?

A: EVERY DAY

Q: WHEN DID YOU LAST SLEEP?

A: DON'T KNOW

Q: HOW LONG?

A: DON'T KNOW

Q: ARE YOU WEARING FALSE TEETH?

A: YES

Q: WERE YOU OPERATING THE VEHICLE?

A: NO

Officer Frey determined that Driver had been driving while intoxicated and placed

---

5. Some of Director's records list the date as March 4th, while others indicate the incident occurred on March 5th. The parties' briefs both assert that the incident occurred on March 5th. The discrepancy in the date does not affect our analysis as Driver did not argue that it constituted a basis on which the trial court should question the credibility of the officer.

him under arrest. Officer Frey transported Driver to the Rolla police station, where he read Missouri's implied consent law to Driver and informed him of his *Miranda*[6] rights. Driver then refused Officer Frey's request to submit to a chemical test of his breath.

After Director's counsel failed to counter Driver's foundation objection to the HGN on the grounds that the AIR did not indicate Officer Frey had been trained on the test, the following exchange occurred:

> THE COURT: All right. [Director] has no further evidence?[7]
>
> [Director's counsel] That's correct.
>
> THE COURT: [to Driver's counsel] Do you wish to present evidence?
>
> [Driver's counsel]: No, sir.
>
> THE COURT: Do either of you wish to be heard any further?
>
> [Driver's counsel]: Judge, again, the only point that [Driver] would make on this is that there were no reasonable grounds. I think that the—The record as—as presented by [Director] includes a pretty clear statement that [Driver] was advised of his Implied Consent rights, and then refused to give a sample of his breath on request of the officer.
>
> [Counsel then notes that no erratic operation of the vehicle led to the stop] There is a—an indication of a moderate odor of intoxicants. As [Director] said, that [Driver] had an open beer in the vehicle. And there would be a moderate odor just by the presence of that open beer.
>
> It was 8:00 at night. [Driver's] eyes were watery and bloodshot. The *explanation for that* is that is the late hour. His balance and walking and turning both indicate swaying, but there was

[sic] other selections [boxes to check on the AIR] that the officer could have made. There's wobbling, stumbling, falling, uncertain staggering, falling. *Swaying is a rather innocuous indication of intoxication.* Otherwise, there are no other observations by the officer.

> [Driver] was—His speech was clear. He was not slurry. He was not confused. He was able to answer all the questions that the officer asked of him, perform some field sobriety tests. There was indication on the walk-and-turn that he didn't maintain the heel-to-toe stance at the beginning. He started before instructions were finished. He also said that he stopped while walking to steady himself, and he did not touch heel-to-toe. But the other more serious—or more indicative indications of intoxication are—are not noted. In that he did not lose his balance while he was walking for the entire number of steps. He did not use his arms for balance. He didn't lose his balance while turning, or make an improper turn. And he did the correct number of steps.
>
> Again, Judge, I don't want to get into the specifics on the one leg stand, but again, he put his foot down we don't know how many times, but otherwise he was able to perform that test.
>
> Again, I know [Director] is going to argue on the totality of the circumstances this is reasonable grounds to find that [Driver] was intoxicated while he was operating that motor vehicle. *And [Driver]'s argument would be that no, it is not sufficient grounds to find that there was probable cause to believe that he was intoxicated.*

---

**6.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** The circuit court did not announce any ruling on Driver's lack of foundation objection to the HGN.

THE COURT: So as he put words in your mouth, is that your position?

[Director's counsel]: That is my position, Your Honor.

THE COURT: Let's go off the record for a second.

THE COURT: Let the record show that the parties appear. Evidence is presented. And *the Court finds, based upon the evidence and the totality of the circumstances reported in the evidence, that there were not reasonable grounds to believe the petitioner was operating a motor vehicle while intoxicated.* And therefore, the action of [Director] revoking [Driver]'s driving privileges is set aside and held for naught.

I would ask [Driver's counsel] to prepare a judgment to that effect.

[Driver's counsel]: Yes, sir.

THE COURT: I appreciate both of you appearing. We'll be off the record. (Emphasis added).

The judgment thereafter entered by the circuit court in favor of Driver stated, *inter alia:*

1. That portion of [Director]'s exhibit A relating to administration and interpretation of the [HGN] test lacks evidentiary foundation and the same is disregarded by the Court in its decision.

2. Under the totality of the circumstances, the Court finds that [Officer Frey] lacked reasonable grounds to believe that [Driver] was operating a motor vehicle while in an intoxicated condition.

3. [Director] has failed to meet her burden of proof regarding the elements set out in [s]ection 577.041.4, RSMo.

This appeal timely followed.

8. Driver's request to file a brief out-of-time is granted.

### Standard of Review

"In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White,* 321 S.W.3d at 307–08. "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308. Conversely, "when the evidence is *uncontested* ... no deference is given to the trial court's findings." *Id.* (emphasis in original).

Evidence is uncontested if the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony or a party "has admitted in its pleadings, *by counsel,* or through the [party's] individual testimony the basic facts of [other party's] case." *Id.* (emphasis added). When the evidence is uncontested, "the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated." *Id.*

### Analysis

In her single point relied on, the Director asserts the trial court misapplied the law in setting aside her administrative revocation because the uncontested evidence showed that Officer Frey had reasonable grounds to believe Driver was driving while intoxicated. Driver counters in his brief[8] that at the hearing his counsel "clearly indicated that he was contesting the issue of whether, after fairly considering all the facts contained in the report, the officer had reasonable grounds to believe that [Driver] was intoxicated. This fact issue was therefore contested."[9]

9. Driver also argues in his brief that because he pled in his petition that he was not under

Our review of the trial transcript and Driver's brief convinces us that, apart from his objection to the admissibility of the HGN evidence, Driver did not contest Director's evidence. He did not, for instance, point out internal inconsistencies in Director's records, argue that the officer should not be considered credible because of any bias or incentive to lie, or simply ask the circuit court—without admitting or assuming that Director's evidence was true—to find that Director had failed to meet her burden of proof. *See White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). Instead, both the transcript and Driver's brief reveal that Driver's argument was a purely legal one—that Driver admitted as true the facts set forth in Exhibit A (with the exception of the HGN test results) but claimed that Director erred in concluding that those admitted facts provided Officer Frey with "probable cause to believe that [Driver] was intoxicated."

Whether the admitted facts were sufficient to give Officer Frey reasonable grounds to believe Driver had been operating his vehicle while intoxicated is a legal question we review without deference to the conclusion reached by the circuit court. *White*, 321 S.W.3d at 308.

■■ "Reasonable grounds and probable cause are essentially synonymous terms." *Routt v. Director of Revenue*, 180 S.W.3d 521, 523 (Mo.App. E.D.2006). A determination of probable cause is reviewed *de novo*. *White*, 321 S.W.3d at 310 (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Probable cause exists "when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." *White*, 321 S.W.3d at 309 (quoting *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002), *overruled on other grounds by White*, 321 S.W.3d at 307 (citations omitted)). To this end, "the trial court must assess the facts 'by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.'" *White*, 321 S.W.3d at 309 (quoting *Brown*, 85 S.W.3d at 4). "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *Id.*

In the case at bar, Director's uncontested evidence was sufficient to give a prudent, cautious, and trained police officer reasonable grounds to believe that Driver had been driving while intoxicated. Officer Frey detected a moderate odor of alcohol; there was an open container of beer in Driver's vehicle; Driver's eyes were watery and bloodshot; Driver refused to submit to a portable breathalyzer test; and Driver was combative and used profanity. *See Edwards*, 295 S.W.3d at 914. In addition, Driver started the walk-and-turn test before being told to proceed, failed to maintain a heel-to-toe stance, stopped to steady himself, and did not touch his heel to his toe. He also swayed, used his arms for balance, and put his foot down during the one-leg stand test. *See Hawkins v. Director of Revenue*, 7 S.W.3d 549, 551 (Mo.App. E.D.1999). If Driver's responses to Officer Frey's questions were sincere, Driver did not know the date, the

arrest and that he did not refuse to submit to a chemical test, Director retained the burden of proof, and "[a]ll issues were controverted." Driver overlooks the statement by his counsel at trial that "the only point that [Driver] would make on this is that there were no reasonable grounds. I think that the—The record as—as presented by the Director includes a pretty clear statement that [Driver] was advised of his Implied Consent rights, and then refused to give a sample of his breath on request of the officer."

time, or what county he was in. Because these observations were sufficient to provide Officer Frey with reasonable grounds to believe that Driver had been driving while intoxicated, we do not need to determine whether the HGN test results should also have been considered.

The Director's point is granted, and the judgment is reversed. The cause is remanded to the circuit court, which is directed to reinstate the Director's administrative revocation of Driver's license.

BARNEY, P.J., and LYNCH, J., Concur.