

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| JEFFREY BROYLES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. SD32783 |
| | ) | Filed: January 29, 2014 |
| DIRECTOR OF REVENUE, | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel W. Imhof, Associate Circuit Judge

**AFFIRMED.**

On February 26, 2011, the Director of Revenue ("DOR"), revoked the driving privileges of Jeffrey Broyles ("Broyles"), pursuant to section 577.041,[1] for failure to submit to a breath test after an incident wherein Broyles was charged with felony resisting by fleeing in a vehicle and misdemeanor driving while intoxicated ("DWI"), and issued citations for speeding and DWI. On May 3, 2013, a post-revocation hearing was conducted and the trial court found in favor of DOR. We affirm the judgment of the trial court.

---

[1] All references to statutes are to RSMo Cum.Supp. 2010, unless otherwise indicated.

**Factual and Procedural History**

The stipulated evidence, including a video with audio of the arresting deputy's patrol vehicle camera, introduced at trial, was as follows.

On February 11, 2011, Officer Danny Fillmore ("Officer Fillmore"), of the Greene County Sheriff's Office, attempted to stop a vehicle driven by Broyles for exceeding the speed limit. Upon observing the Broyles' vehicle speeding and passing other vehicles, Officer Fillmore, using his vehicle's radar unit, checked the speed of Broyles' vehicle at 55 mph, which was 15 mph over the speed limit.

Officer Fillmore then attempted a traffic stop for the speeding violation and observed Broyles begin to "accelerat[e] heavily." Officer Fillmore activated his emergency equipment and attempted to stop Broyles. Broyles attempted to elude Officer Fillmore by accelerating the vehicle rapidly, speeding down snow- and ice-covered residential roads, and passing at least three streets where he could have stopped safely prior to coming to his final stop. Upon stopping the vehicle, Broyles immediately exited the vehicle and walked away from Officer Fillmore's patrol car toward a house, putting his hands into his pockets as if to retrieve something. Officer Fillmore commanded Broyles to get on the ground and put his hands up, but Broyles refused to comply with Officer Fillmore's orders and continued walking toward the house. Officer Fillmore continued to give Broyles verbal commands to stop as he deployed his K-9 Patrol unit dog, "Reiko."

As Officer Fillmore deployed Reiko, a passenger exited the passenger side of the vehicle and began to walk toward him while Broyles continued walking toward the house against Officer Fillmore's instructions. Officer Fillmore ordered the passenger to get on the ground and repeatedly ordered Broyles to get on the ground and put his hands up or he was going to release

2

Reiko. The passenger made a movement toward Officer Fillmore at which time Officer Fillmore drew his weapon and ordered the passenger to the ground. As Broyles continued to ignore Officer Fillmore's commands, Corporal Donaldson arrived on the scene to give assistance. Broyles finally put his hands in the air, stating he had only been drinking and Officer Fillmore should "chill out." Broyles was secured and placed in handcuffs. Broyles emitted an "overpowering odor of intoxicants." Officer Fillmore read Broyles the *Miranda*[2] warning, and attempted to lead Broyles to a patrol vehicle. Broyles continued to resist Officer Fillmore, cursing at him with slurred speech, and making racist remarks.

Broyles was transported to the Greene County Jail for processing. At the jail, Officer Fillmore attempted to place Broyles on a bench, but Broyles resisted, stood, and stared at Officer Fillmore with his now visible watery, bloodshot, glassy, and staring eyes. Broyles continued to physically resist Officer Fillmore's commands by standing up and approaching him while his back was turned, cursing at him, and spitting. Officer Fillmore noted Broyles had a "nauseating odor of intoxicants" while Broyles was cursing in his face. Officer Fillmore read Broyles the *Miranda* warning again at the jail.

Officer Fillmore's "Alcohol Influence Report" indicates that the initial contact with Broyles was at 1:00 a.m., arrest was at 1:05 a.m., and at 1:30 a.m., Broyles was advised of the "Implied Consent" law. Broyles then refused to submit to a breath test.

After Broyles insisted he had not drank alcohol in three years, Officer Fillmore asked him if he would like to attempt to perform standardized field sobriety tests and Broyles stated he would, but later refused to do so when given the opportunity. Broyles was charged with felony

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

resisting by fleeing in a vehicle and misdemeanor DWI, and was issued citations for speeding and DWI. Thereafter, DOR revoked Broyles' license for a year pursuant to section 577.041.

On February 18, 2011, Broyles filed a petition for review of DOR's revocation of his license. A hearing was held before the trial court on May 3, 2013, but no recording was taken of the hearing. On appeal, the parties stipulated to a "Supplemental Legal File" containing Exhibit 1, which the parties agreed was introduced as evidence to the trial court. Exhibit 1 contained "the original 15 day permit issued to [Broyles] by the arresting deputy, as well as the alcohol influence report completed by the deputy, a copy of the original tickets that were issued, the probable cause statement, and the narrative report authored by the deputy." The trial court viewed a video with audio of Officer Fillmore's patrol vehicle camera and set a deadline for the parties to provide "Suggestions."[3] The trial court then issued its judgment affirming the revocation of Broyles' license, noting the trial court "previously viewed the video of the arrest and a stipulated and certified copy of the arrest report[.]" This appeal followed.

Broyles, in his sole point relied on, claims the trial court erred in entering its judgment in favor of DOR because the judgment is against the weight of the evidence, and erroneously applies the law because Officer Fillmore had no reasonable grounds prior to arrest to believe Broyles was driving while intoxicated, a required element in sustaining a driver's license revocation.

The issue presented for our determination is whether Officer Fillmore had reasonable grounds to believe Broyles was driving while intoxicated.

---

[3] The parties' Suggestions were not included as a part of the legal file.

## Standard of Review

In driver's license revocation cases, as in any other court-tried civil case, "the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Director of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010). We must have a firm belief the judgment is wrong to set aside a judgment as "against the weight of the evidence." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

"When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *White*, 321 S.W.3d at 308. Conversely, "when the evidence is *uncontested* . . . no deference is given to the trial court's findings." *Id.* at 308 (emphasis in original).

> Evidence is uncontested if the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony or a party has admitted in its pleadings, *by counsel*, or through the party's individual testimony the basic facts of other [sic] party's case. When the evidence is uncontested, the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated.

*Harlan v. Dir. of Revenue*, 334 S.W.3d 673, 677 (Mo.App. S.D. 2011) (internal quotations and citations omitted) (emphasis in original). "Whether the admitted facts were sufficient to give [the] Officer [] reasonable grounds to believe Driver had been operating his vehicle while intoxicated is a legal question we review without deference to the conclusion reached by the [trial] court." *Id.*

## Analysis

On review of a driver's license revocation based on a refusal to submit to a [chemical test], there are only three issues to be determined: '(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test.'

*Risner v. Director of Revenue*, 404 S.W.3d 355, 358 (Mo.App. S.D. 2013) (quoting *Hager v. Director of Revenue State*, 284 S.W.3d 192, 194 (Mo.App. S.D. 2009)). In the present case, there was no dispute regarding the issues of: (1) whether Broyles was arrested or stopped, and (2) whether Broyles refused to submit to the breath test. This leaves as the only issue presented to the trial court whether Officer Fillmore had reasonable grounds to believe Broyles was driving a motor vehicle while intoxicated.

Broyles did not contest the evidence before the trial court. A hearing was held before the trial court on May 3, 2013, but no recording was taken of the hearing. On appeal, the parties stipulated to the exhibits introduced into evidence, which included the 15-day permit issued to Broyles, Officer Fillmore's Alcohol Influence Report, the citations issued, the probable cause statement, and Officer Fillmore's narrative report. Broyles also provided this Court with Exhibit 2, the DVD video and audio of Officer Fillmore's patrol vehicle camera, which was reviewed by the trial court. A review of the parties' briefs makes it clear that Broyles' argument is purely a legal one as the evidence adduced was uncontested.

Given this posture of the appeal, we only determine whether Officer Fillmore had reasonable grounds to believe Broyles was driving while intoxicated. *See* § 577.041.4(2)(a). Because the evidence is uncontested, the only question before this Court is whether the trial court drew the proper legal conclusions from the facts. *White*, 321 S.W.3d at 308.

"Reasonable grounds" is synonymous with "probable cause" for arrest for DWI. *White*, 321 S.W.3d at 305 n.6.

> 'Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense. . . . There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.'

*Id.* at 312 *(quoting Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 584–85 (Mo. banc 2007)).

When an officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist, then probable cause exists. *Steele-Danner v. Dir. of Revenue*, 229 S.W.3d 607, 610 (Mo.App. S.D. 2007). We must view the facts as the situation would have appeared to a prudent, cautious, and trained police officer. *Id.*

Here, there were many facts supporting the conclusion that Officer Fillmore had probable cause to believe Broyles had been driving while intoxicated. Officer Fillmore observed Broyles exceeding the speed limit and driving recklessly. Even after activating his emergency lights and siren, Broyles attempted to elude Officer Fillmore by driving at an excessive speed, and passing at least three streets before stopping. Once he stopped the vehicle, Broyles got out and attempted to go inside a house ignoring Officer Fillmore's orders that he drop to the ground and put his hands up.

Broyles eventually dropped to the ground, put his hands in the air, and stated he had been drinking. Officer Fillmore smelled "an overpowering" and "nauseating odor of intoxicants" on Broyles. After placing Broyles in handcuffs, Broyles attempted to pull away from Officer Fillmore, verbally cursed him, spoke with slurred speech, and made racial comments. When they arrived at the jail, Broyles' eyes were visible in the light and Fillmore observed they

7

appeared watery, bloodshot, glassy, and staring. Even at the jail, Broyles continued to physically resist Officer Fillmore's commands, cursing at him, and spitting. These uncontested facts demonstrate Officer Fillmore had reasonable grounds to believe Broyles had been operating a motor vehicle while intoxicated, and further support the trial court's judgment confirming the revocation of Broyles' license.

Broyles argues he was arrested upon exiting his vehicle, and "there was little to no evidence of intoxication prior to the arrest in order to establish probable cause[.]" Broyles' position misstates Missouri law. Under section 577.041, an arresting officer does not necessarily have to "have reasonable grounds to believe a driver was driving while intoxicated before he makes the initial stop; rather, '[i]t is sufficient if, after the stop, the arresting officer observes sufficient indicia of intoxication to reasonably believe the driver was driving a motor vehicle while intoxicated.'" *Warren v. Dir. of Revenue*, No. SD32501, 2013 WL 6493712, at *3 (Mo.App. S.D. Dec. 11, 2013) (quoting *Gelsheimer v. D.O.R.*, 845 S.W.2d 107, 108 (Mo.App. W.D. 1993)).

The "initial stop" of Broyles was clearly for acts other than DWI. When Broyles failed to stop, even after Officer Fillmore activated his emergency lights and siren, Officer Fillmore continued to follow Broyles and observed him driving recklessly at an excessive speed. Then, when Broyles finally stopped, he attempted to flee, resisted arrest, and ignored Officer Fillmore's instructions.

The fact Officer Fillmore observed Broyles commit other offenses; i.e., felony resisting by fleeing in a vehicle and speeding, and proceeded to arrest Broyles for those offenses, does not negate the observations he made after stopping Broyles. This Court has noted that "[n]othing in section 577.014 indicates that the person must be arrested or stopped specifically for DWI."

8

***Dixon v. Director of Revenue***, 118 S.W.3d 302, 305 (Mo.App. S.D. 2003).  Under ***Dixon***, an arresting officer may develop reasonable grounds to arrest a person for DWI even after that individual has been placed under arrest for other acts.  ***Id.*** (noting probable cause to arrest for an alcohol-related traffic violation may be developed after the officer stops the motorist, "regardless of whether the officer had probable cause for the stop.").

Here, Broyles was arrested at 1:05 a.m., was read the ***Miranda*** warning, and taken to the Greene County Jail.  Officer Fillmore had reason to arrest Broyles for acts other than DWI when he was arrested at 1:05 a.m.

Once at jail, Broyles was again read the ***Miranda*** warning at 1:30 a.m., but this time was also read Implied Consent, after Officer Fillmore smelled a nauseating odor of intoxicants from Broyles; observed Broyles' watery, bloodshot and glassy eyes; listened to Broyles' foul and racial slurs; and observed him spitting on the floor.[4]  The Implied Consent read to Broyles at 1:30 a.m. specifically stated:  "You are under arrest and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated or drugged condition[.]"  Broyles was also then issued a citation for operating a motor vehicle while in an intoxicated condition, and charged with misdemeanor driving while intoxicated.

After the first arrest and bringing Broyles to jail, probable cause to further arrest Broyles for DWI was observed.  Broyles smelled of intoxicants, was combative, verbally abusive, spitting, and his eyes indicated he was intoxicated.  These factors, along with his actions prior to the first arrest, gave Officer Fillmore reasonable grounds to believe that Broyles was driving while intoxicated.

If we were to accept Broyles' argument, it would mean an officer that arrests an individual for other criminal violations, could not *later* have probable cause to also arrest the

---

[4] Officer Fillmore then affixed a "spit hood" to Broyles' head and advised him not to spit anymore.

individual for DWI, even if the individual made a complete confession, simply because the evidence of intoxication was not evident to the officer until after he arrested the individual for the other criminal violations. Broyles' argument is that once the officer comes close to the suspect, it is too late to establish "probable cause" to arrest for DWI simply because the officer already placed the individual under arrest for another charge. We decline to accept Broyles' argument in that it is not consistent with **Warren** and **Gelsheimer**, and is too narrow an interpretation of probable cause on this record.

The record before this Court shows that at the time of Broyles' second arrest,[5] Officer Fillmore's observations were more than sufficient to reasonably believe Broyles was driving while intoxicated. It is sufficient then that Officer Fillmore observed "indicia of intoxication" *in this case* after the stop and arrest for other criminal violations. The record supports the conclusion that Officer Fillmore had reasonable grounds to arrest Broyles for DWI, and the trial court's judgment was not against the weight of the evidence.

For all of the reasons stated above, Broyles' point is denied. The trial court's judgment is affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs

---

[5] Broyles also argues there was only one arrest in this case, which was immediately after Broyles was stopped. We disagree. Broyles was clearly arrested at the scene of the stop. Section 544.180, RSMo 2000, provides "arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer[.]" The first arrest took place when Broyles was restrained by Officer Fillmore and placed in handcuffs.

The second arrest took place when Officer Fillmore read Broyles the **Miranda** warning, the Implied Consent, announced Broyles was under arrest for DWI and issued Broyles a citation for DWI. *See **Dixon***, 118 S.W.3d at 308 & n.8 (holding "[t]he recitation of *Miranda* warnings, an announcement that he was under arrest for DWI, a reading of the implied consent form, and the issuance of a citation for DWI were sufficient to effectuate [Broyles'] arrest under the circumstances faced by [O]fficer [Fillmore]."). At this point, Broyles was physically restrained in handcuffs at the jail.